# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

NEWTON MCNEALY,                                  CIVIL ACTION
    Plaintiff

VERSUS                                           NO. 14-2181

DARRYL J. BECNEL, ET AL.,                        SECTION: "E" (2)
    Defendants

## ORDER AND REASONS

This matter comes before the Court on the Defendants' dispositive motions.[1] The Defendants in this case are: (1) United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW International"); (2) United Steelworkers Local Union, Local 750 ("Local Union"); (3) Motiva Enterprises, LLC ("Motiva"); (4) Shell Oil Co. ("Shell Oil"); (5) Shell Chemical LP ("Shell Chemical");[2] (6) Saudi Refining, Inc. ("Saudi Refining"); (7) the United States Equal Employment Opportunity Commission; and (8) Metropolitan Life Insurance Co. ("Met-Life"). Each Defendant has filed at least one dispositive motion, and some have filed two.

## FACTUAL & PROCEDURAL BACKGROUND

This civil action involves claims of, among others, race discrimination, retaliation, and harassment, levied by the Plaintiff, Newton McNealy, against a number of entities.[3] McNealy is an African-American male who previously worked as a machinist for Motiva at a Motiva-owned facility in Norco, Louisiana. McNealy alleges, on or about November

---

[1] R. Docs. 117, 118, 121, 138, 146, 210, 215, 216.

[2] Shell Oil and Shell Chemical are sometimes referred to collectively by the Court as the "Shell Defendants." The Plaintiff sometimes refers to these two Defendants as "Shell."

[3] The operative facts, as alleged by McNealy, are taken from McNealy's "Second-Amended Complaint." *See* R. Doc. 114. This Second-Amended Complaint is in reality McNealy's Third-Amended Complaint and is referred to as such herein.

7, 2011, while in the course and scope of his employment with Motiva, he was "victimized" and "struck in the head" by a crane control box at the hands of his white co-workers. After the attack, McNealy alleges he retreated to his personal vehicle to recover whereupon his co-workers "wrapped and sealed" him in the vehicle and "covered the window with some type of foam." McNealy also alleges, in the days that followed, he was verbally assaulted, threatened, sodomized, and sexually harassed by his white co-workers, which contributed to a hostile work environment. According to McNealy, he complained to his superiors on numerous occasions and filed formal complaints with his union, but the investigations into his complaints led nowhere. McNealy thus alleges the various Defendants condoned "inappropriate behavior in the workplace," and ultimately violated the Collective Bargaining Agreement between Motiva and his union.

McNealy alleges, as a result of the treatment he experienced, he developed and has been diagnosed with post-traumatic stress disorder, anxiety, paranoia, and depression, among other conditions. In light of his medical conditions, McNealy alleges he was placed on non-occupational disability in February of 2012 and remained on disability for over two years. According to McNealy, after having been on disability for an extended period of time, he was converted to "non-pay status," and he began experiencing other adverse employment actions by the Shell Defendants and Motiva. McNealy alleges, for example, the Shell Defendants and Motiva confiscated his ID badge and his company credit card and cancelled his insurance. These actions, according to McNealy, ultimately led to the termination of his employment at the Motiva facility.

McNealy filed suit on September 22, 2014, and has been granted leave of court on multiple occasions to amend his complaint.[4] McNealy filed his third-amended complaint on December 9, 2015. McNealy's third-amended complaint, like his prior complaints, is less than clear. In an Order dated June 30, 2016, the Court identified for McNealy the deficiencies in his third-amended complaint, citing Federal Rule of Civil Procedure 8(a).[5] The Court noted Rule 8(a) requires a pleading stating a claim for relief to include, *inter alia*, "a short and plain statement of [each] claim showing that the pleader is entitled to relief" against each defendant.[6] Considering the third-amended complaint in light of Rule 8(a), the Court found McNealy's third-amended complaint failed to clearly identify, with precision, the specific causes of action he is bringing against each Defendant and the laws or statutes pursuant to which those causes of action were filed. In sum, the Court found it unclear from the third-amended complaint which causes of action McNealy is bringing against each Defendant.

The Court convened a telephone status conference with counsel for the parties on July 8, 2016 to discuss the third-amended complaint. During the status conference, McNealy's attorney, Quiana Hunt, clarified the causes of action that McNealy claims he has brought against each Defendant. The Court memorialized this discussion in a Minute Entry, to which the Court attached a chart specifically identifying each cause of action

---

[4] McNealy's complaints include Record Document 1 (Complaint), Record Document 37 (Amended and Supplemental Complaint), Record Document 60 (Second-Amended Complaint), and Record Document 114 (Third-Amended Complaint).

[5] R. Doc. 208.

[6] *See, e.g., Hernandez v. Wood/Chuck Chipper Corp.*, No. 4:11-CV-597, 2012 WL 1836352, at *1 (E.D. Tex. Apr. 13, 2012) (citing FED. R. CIV. P. 8(a)(2)) (alterations omitted) ("The Federal Rules of Civil Procedure require that *each* claim in a complaint include 'a short and plain statement showing that the pleader is entitled to relief.'"); *De Ward v. Gomez*, No. 2:09-CV-0204, 2009 WL 3170255, at *1 (N.D. Tex. Oct. 2, 2009) ("Plaintiff was ordered to file an amended complaint setting forth a short and plain statement of his claim against each defendant showing his entitlement to relief, in compliance with Federal Rule[] of Civil Procedure 8.").

McNealy claims to be pursuing against each Defendant.[7] Without agreeing with McNealy that these causes of action are actually pleaded in the third-amended complaint, the Court will assume these are the causes of action pleaded therein for purposes of this decision.

**LEGAL STANDARDS**

## I.   **Motions to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[8] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[11] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[12]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[13] "[W]here the well-pleaded facts do not permit the court to infer

---

[7] R. Doc. 209 (Minute Entry); R. Doc. 209-1 (Chart).
[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[10] *Id.*
[11] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[12] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[13] *Twombly*, 550 U.S. at 555.

4

more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[14] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[15]

## II. **Motions for Summary Judgment**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] "An issue is material if its resolution could affect the outcome of the action."[17] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[18] All reasonable inferences are drawn in favor of the nonmoving party.[19] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[20]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[21] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the

---

[14] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

[15] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).

[16] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[17] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[18] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[19] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[20] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[21] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[22]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[23] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[24] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[25] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[26] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must

---

[22] *Celotex*, 477 U.S. at 322–24.

[23] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[24] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

[25] *Celotex*, 477 U.S. at 332–33.

[26] *Id.*

either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[27] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[28]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[29]

## LAW AND ANALYSIS

Each Defendant has filed or joined in at least one dispositive motion, and some have filed two.[30] Moreover, some motions were filed on behalf of multiple defendants. The Court begins with McNealy's federal causes of action against each Defendant, followed by a separate section addressing McNealy's state law causes of action, in general.

## I.   USW International & Local Union (R. Docs. 117, 118, 215, 216)

USW International and the Local Union move to dismiss McNealy's claims against

---

[27] *Celotex*, 477 U.S. at 332–33, 333 n.3.

[28] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.

[29] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[30] R. Docs. 117 (USW International); 118 (Local Union); 121 (Motiva, Shell Chemical, & Shell Oil); 138 (Saudi Refining); 146 (EEOC); 210 (Met-Life Insurance Co.); 215 (Local Union); 216 (USW International).

them under Rule 12(b)(6).[31] The factual allegations in the third-amended complaint with respect to USW International and the Local Union are as follows. McNealy alleges he is a "paying member of the Local Union (750), who is entitled to representation," but the Union[32] failed to "address his grievances against Shell and Motiva."[33] McNealy further alleges the Union "had a fiduciary duty to protect his rights under the terms and condition[s] of the Collective Bargaining Agreement as the Labor Organization on behalf of its members with Shell and Motiva, but refused and failed to do so."[34] McNealy also alleges the "Union condoned inappropriate behavior in the workplace in violation of the Collective Bargaining Agreement." [35] McNealy alleges the Union, along with other Defendants, "had the power to prevent the occurrences, but failed to do so."[36] According to McNealy, the Union conspired with the Shell Defendants and Motiva to "deprive him of his rights," and their actions were "retaliatory in nature" because McNealy "refused to work in a hostile work environment, without assurance of protection."[37] McNealy also alleges the Union's actions created or contributed to the existence of a hostile work environment.

According to McNealy, he is bringing causes of action against USW International and the Local Union under (1) Section 301 of the Labor Management Relations Act, for breach of the duty of fair representation; (2) 42 U.S.C. § 1985(2) and (3); (3) 42 U.S.C. § 1986; (4) 29 U.S.C. § 141; (5) La. Civ. Code art. 1906; (6) La. Civ. Code art. 2315; (7) La.

---

[31] R. Doc. 117 and 118.
[32] Although USW International and the Local Union are separate and distinct legal entities, McNealy refers to them as one, the "Union," and makes the same allegations against them in the third-amended complaint. The Court does so too, in certain instances, as the distinction does not matter for present purposes.
[33] R. Doc. 114 at 10. The Plaintiff refers to Shell Oil and Shell Chemical as "Shell."
[34] R. Doc. 114 at 11.
[35] R. Doc. 114 at 11.
[36] R. Doc. 114 at 15.
[37] R. Doc. 114 at 13.

Civ. Code art. 2316; (8) La Civ. Code art. 2320; (9) La. Civ. Code art. 3499; and (10) La. Rev. Stat. § 9:3801.[38]

    a.    <u>Section 301 of the Labor Management Relations Act</u>

McNealy alleges USW International and the Local Union breached the duty of fair representation, which is implied under Section 301 of the Labor Management Relations Act.[39] Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.[40]

Section 301 of the Labor Management Relations Act is codified at 29 U.S.C. § 185 and has been recognized by the Supreme Court of the United States as a "potent source of federal labor law."[41] Section 301 provides an individual employee with a federal cause of action against his or her *employer* for breach of a collective bargaining agreement.[42] Also, an employee's cause of action against a *union* for breach of the duty of fair representation is implied under Section 301.[43] "Because of the intricate relationship between the duty of fair representation and the enforcement of a collectively bargained contract, the two causes of action have become 'inextricably interdependent' and known as a 'hybrid § 301/fair representation suit.'"[44]

---

[38] R. Doc. 209-1 at 1. McNealy's state law claims are dealt with in Section VI, *infra*.

[39] *See, e.g., Electrical Workers v. Foust*, 442 U.S. 42, 46 n.8 (1979) ("The duty of fair representation is . . . implicit in the National Labor Relations Act."). The Labor Management Relations Act amended the National Labor Relations Act. *See generally Smith v. Int'l Org. of Masters, Mates and Pilots*, 296 F.3d 380 (5th Cir. 2002).

[40] 29 U.S.C. § 185(a).

[41] *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990).

[42] *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 287 (5th Cir. 1988) (citations omitted).

[43] *Id.* (citing *Vaca v. Sipes*, 386 U.S. 171 (1967)).

[44] *Id.* at 287–88 (quoting *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164–65 (1983)). "The interdependency arises from the nature of the collective bargaining agreement. If the arbitration and

A motion to dismiss under Rule 12(b)(6) is designed to test the pleadings. Nevertheless, McNealy attached Exhibits A, B, C, D, Q, O, K, H, and I to his memorandum in opposition to the Local Union's motion to dismiss[45] and USW International's Motion to Dismiss. [46] These documents are outside the pleadings, and they have not been excluded by the Court. In this situation, Rule 12(d) requires the Court to deny the Unions' motions to dismiss and, instead, treat the pleadings as motions for summary judgment under Rule 56. [47]

When converting a motion to dismiss to a motion for summary judgment under Rule 12(d), the Court must give the parties ample opportunity to present argument and summary judgment evidence. The parties may not have attached all the relevant documents and exhibits they would have attached if they had known the motion would be treated as a motion for summary judgment. Accordingly, pursuant to Rule 56(e)(1), the Court will allow the parties an opportunity to properly support their arguments and factual assertions and address the arguments and factual assertions raised by opposing counsel.

The Unions' motions to dismiss McNealy's Section 301 claims under Rule 12(b)(6) are converted to motions for summary judgment.

---

grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted the procedure. Further, he is bound by the procedure's result unless he proves the union breached its duty of fair representation." *Daigle v. Gulf State Util. Co.*, 794 F.2d 974, 977 (5th Cir. 1986) (citations omitted).

[45] R. Doc. 224.

[46] R. Doc. 225.

[47] *See* Fed. R. Civ. P. 12(d).

b.    42 U.S.C. § 1985(2) and (3)

McNealy seeks relief against USW International and the Local Union under Title 42, United States Code, Sections 1985(2) and (3).

Section 1985(2) protects parties and witnesses who seek to attend or testify in federal court.[48] Section 1985(2) has no relevance in this case. McNealy does not allege that USW International or the Local Union violated his right to attend or testify in federal court. McNealy's claim against the Union under Section 1985(2) is dismissed with prejudice.

"Section 1985(3) prohibits private conspiracies to deprive persons of equal protection of the laws."[49] To state a claim for relief under Section 1985(3), a plaintiff must show, *inter alia*, "that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action."[50] Therefore, to state a claim under Section 1985(3), the plaintiff must allege sufficient facts showing the defendants conspired to discriminate against the plaintiff on the basis of his or her race.[51]

A motion to dismiss under Rule 12(b)(6) is designed to test the pleadings. Nevertheless, McNealy attached Exhibits A, B, C, D, Q, O, K, H, and I to his memorandum in opposition to the Local Union's motion to dismiss[52] and the International Union's Motion to Dismiss.[53] These documents are outside the pleadings, and they have not been

---

[48] *See, e.g., Kush v. Rutledge*, 460 U.S. 719, 724 (1983); *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340 (5th Cir. 1981); *Bryant v. Miss. Military Dep't*, 519 F. Supp. 2d 622, 628–29 (S.D. Miss. 2007); *Turner v. Bowen*, No. 3:06-cv-576, 2007 WL 1295787, at *2 (S.D. Miss. May 1, 2007); *Ragsdale v. Classroom Teachers of Dallas*, No. 3:06-CV-863, 2007 WL 426637, at *4 n.5 (N.D. Tex. Feb. 5, 2007).

[49] *Daigle v. Gulf State Utilities Co.*, 794 F.2d 974, 978 (5th Cir. 1986) (citation omitted).

[50] *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993) (internal quotations omitted) (quoting *Griffin v. Breckenridge*, 403 U.S. 825, 833 (1983)). *See also David v. Signal Intern., LLC*, No. 08-1220, 2012 WL 10759668, at *36 (E.D. La. Jan. 4, 2012).

[51] *See, e.g., Newsome v. EEOC*, 301 F.3d 227, 232 (5th Cir. 2002).

[52] R. Doc. 224.

[53] R. Doc. 225.

excluded by the Court. In this situation, Rule 12(d) requires the Court to deny the Unions' motions to dismiss and, instead, treat the pleadings as motions for summary judgment under Rule 56.[54]

When converting a motion to dismiss to a motion for summary judgment under Rule 12(d), the Court must give the parties ample opportunity to present argument and summary judgment evidence. The parties may not have attached all the relevant documents and exhibits they would have attached if they had known the motion would be treated as a motion for summary judgment. Accordingly, pursuant to Rule 56(e)(1), the Court will allow the parties an opportunity to properly support their arguments and factual assertions and address the arguments and factual assertions raised by opposing counsel.

The Unions' motions to dismiss McNealy's Section 1985(3) claims under Rule 12(b)(6) are converted to motions for summary judgment.

    c.    <u>42 U.S.C. § 1986</u>

Section 1986 provides for liability against third parties based on their knowledge of Section 1985 violations. Section 1986 does not provide an independent cause of action but instead requires the existence of a valid claim under Section 1985.[55] "A valid § 1985 claim is a prerequisite to a § 1986 claim."[56] Because the Unions' motions to dismiss the Section 1985(3) claims have been converted to motions for summary judgment, these motions to dismiss also must be converted.

The Unions' motion to dismiss McNealy's Section 1986 claims under Rule 12(b)(6) are converted to motions for summary judgment.

---

[54] *See* Fed. R. Civ. P. 12(d).

[55] *Bradt v. Smith*, 634 F.2d 796, 799 n.3 (5th Cir. 1981).

[56] *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000).

d.    29 U.S.C. § 141, *et seq.*

McNealy represents he is pursuing causes of action against USW International and the Local Union under 29 U.S.C. § 141, *et seq.* In particular, McNealy indicates his causes of action are under 29 U.S.C. § 151.

The National Labor Relations Act of 1935, as amended by the Labor Management Relations Act, is codified at 29 U.S.C. § 141, *et seq.* Section 151 merely sets forth, generally, the "findings and declarations of policy" behind the National Labor Relations Act.[57] In this case, McNealy cites Section 151 in his third-amended complaint. McNealy alleges USW International and the Local Union are "regulated under 29 U.S.C. § 151 et seq. as a National Labor Relations Organization on behalf of its members."[58] The Unions' motions to dismiss McNealy's claims under Section 151 are dismissed with prejudice.

The only other section of the National Labor Relations Act referenced in McNealy's third-amended complaint is Section 141.[59] McNealy alleges USW International and the Local Union "had a duty to represent him under the collective bargaining agreement, but breached their duty by failing to do so as required by Labor Management Relations Act § 301 and National Labor Relations Act § 141."[60] McNealy's claim under Section 141 is one and the same with his Section 301 claim, as Section 141 is merely the first statutory section of the National Labor Relations Act, as amended by Section 301 of the Labor Management Relations Act.[61] McNealy's claims against USW International and the Local Union under 29 U.S.C. § 141 are, in reality, claims under Section 301 of the Labor Management

---

[57] *See Eastex, Inc. v. N.L.R.B.*, 437 U.S. 556, 565 n.14 (1978); *N.L.R.B. v. Brown Paper Mill Co.*, 108 F.2d 867, 870 (5th Cir. 1940).
[58] R. Doc. 114 at 7.
[59] R. Doc. 114 at 1, 22.
[60] R. Doc. 114 at 22.
[61] *Thomas v. LTV Corp.*, 39 F.3d 611, 614 (5th Cir. 1994).

Relations Act for breach of the duty of fair representation. The Unions' motion to dismiss McNealy's Section 301 claims under Rule 12(b)(6) have been converted to motions for summary judgment.[62]

## II.   Motiva Enterprises, Shell Chemical LP, Shell Oil Co. (R. Docs. 121, 211)

Motiva, Shell Oil, and Shell Chemical move to dismiss McNealy's claims against them under Rule 12(b)(6).[63]

McNealy was an employee of Motiva, a subsidiary of the Shell Defendants, as a machinist when, according to McNealy, he was subjected to discriminatory treatment, harassed, and retaliated against for several reasons. McNealy alleges, for example, while in the course and scope of his employment with Motiva and the Shell Defendants, he was "victimized" and "struck in the head with a crane control box" by white co-workers.[64] McNealy alleges that, after the incident, he was repeatedly harassed and discriminated against by other employees and supervisors of Motiva and the Shell Defendants due to his race. [65] According to McNealy, Motiva and the Shell Defendants also failed to "take corrective action" in response to the discriminatory treatment he experienced, although an investigation into the allegations was commenced.[66] According to McNealy, Motiva and the Shell Defendants also took a number of adverse employment actions against him, including confiscating his ID badge and company credit card and cancelling his insurance. [67] More generally, McNealy alleges Motiva and the Shell Defendants

---

[62] *See supra* page 10.

[63] R. Doc. 121 and 211. For purposes of this Order & Reasons, the Court refers to Shell Chemical LP and Shell Oil Co., collectively, as the "Shell Defendants."

[64] R. Doc. 114 at 8.

[65] R. Doc. 114 at 9.

[66] R. Doc. 114 at 9–10.

[67] R. Doc. 114 at 12.

"condoned inappropriate and criminal behavior" at Motiva's Norco facility, "in violation of their employment practices and policies."[68]

McNealy brings causes of action against Motiva, Shell Chemical LP, and Shell Oil Co. under (1) 42 U.S.C. § 2000, *et seq.*; (2) 42 U.S.C. § 12101; (3) 42 U.S.C. § 1981; (4) 42 U.S.C. § 1985(2) and (3); (5) 42 U.S.C. § 1986; (6) 29 U.S.C. § 1001; (7) 29 U.S.C. § 1132; (8) 29 U.S.C. § 141; (9) Article III, Section 2, Clause 1 of the United States Constitution; (10) La. Rev. Stat. § 23:301; (11) La. Rev. Stat. § 23:1361; (12) La. Rev. Stat. § 9:3801; (13) La. Civ. Code art. 1906; (14) La. Civ. Code art. 2315; (15) La. Civ. Code art. 2316; (16) La. Civ. Code art. 2320; and (17) La. Civ. Code art. 3499.[69]

    a.    <u>42 U.S.C. § 2000, *et seq.*</u>

Title 42, United States Code, Section 2000, marks the beginning of Title VII of the Civil Rights Act of 1964. Title VII prohibits employers, both public and private, from discriminating against their employees and prospective employees on the basis of race, color, religion, sex, and national origin. [70] "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')."[71] Title VII also bars employers from retaliating against employees and prospective employees or subjecting them to a hostile work environment for engaging in a protected activity.[72] Title VII authorizes private causes of action for discrimination, retaliation, and a hostile work environment.

---

[68] R. Doc. 114 at 11.
[69] R. Doc. 209-1 at 2.
[70] *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).
[71] *Id.*
[72] 42 U.S.C. § 2000e. *See also Bartz v. Mitchell Ctr.*, No. A-05-CA-959, 2008 WL 577388, at *2 (W.D. Tex. Jan. 23, 2008).

McNealy's causes of action under Title VII are subject to dismissal under Rule 12(b)(6).[73] A plaintiff may not pursue Title VII claims in federal court unless he or she has exhausted all of the available administrative remedies.[74] "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue."[75] In his third-amended complaint, McNealy alleges he filed complaints with the EEOC, but McNealy does not allege he was ever issued a right-to-sue letter.[76] In fact, McNealy concedes he was not issued a right-to-sue letter by the EEOC.[77] Thus, McNealy did not exhaust his administrative remedies. McNealy argues, however, that he was excused from exhausting his administrative remedies because doing so would have been futile.[78] McNealy bears the burden of establishing exhaustion would have been futile.[79] McNealy argues he "filed several complaints" with the EEOC, but the EEOC "failed to investigate" those complaints, thus preventing him from exhausting his administrative remedies and rendering futile his attempts to do so.[80] This argument, however, is short on specifics, as McNealy has not alleged any facts to support his argument that the EEOC failed to investigate his complaints. Conclusory allegations that exhaustion would have been futile are insufficient to evade the general requirement that a plaintiff exhaust his or her administrative remedies before proceeding in federal court.[81]

---

[73] Timely filing of a complaint with the EEOC is not a jurisdictional prerequisite to bringing suit in federal court. *Waiters v. Parsons*, 729 F.2d 233, 236 (5th Cir. 1984).

[74] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); *Hall. v. Cont'l Airlines, Inc.*, 252 F. App'x 650, 653 (5th Cir. 2007). *See also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 285 (2002).

[75] *Taylor*, 296 F.3d at 379 (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996)).

[76] R. Doc. 114 at 16, 22

[77] R. Doc. 114 at 23.

[78] R. Doc. 186-1 at 11.

[79] *See, e.g., Guerra v. Comm'cns Workers*, 91 F.3d 140 (5th Cir. 1996) (citations omitted).

[80] R. Doc. 186-1 at 10–11.

[81] This rule of law is oft recognized in prisoner litigation, but applies with equal force in this case. *Kidd v. Livingston*, 463 F. App'x 311, 313 (5th Cir. 2012); *Howe v. Livingston*, No. 9:11-cv-162, 2012 WL 4127621, at *7 (E.D. Tex. Sept. 17, 2012). *See also Stringer v. Martin*, No. 1:11-cv-704, 2012 WL 5195819, at *1 (E.D. Tex. Oct. 18, 2012) ("Petitioner's petition fails to cite any facts to support his allegation that exhaustion would be futile."); *A.T. v. Leflore Cnty. Sch. Dist.*, No. 4:09-cv-128, 2010 WL 1506974, at *1 (N.D. Miss.

As a precondition to filing suit under Title VII, a plaintiff must exhaust his or her available administrative remedies. In this case, it is undisputed that McNealy was not issued a right-to-sue letter by the EEOC and, as a result, failed to exhaust his administrative remedies. His argument that exhaustion would have been futile is conclusory. For these reasons, McNealy is unable to pursue his Title VII causes of action in this Court at this time. McNealy's Title VII causes of action against Motiva and the Shell Defendants must be dismissed without prejudice due to McNealy's failure to exhaust his administrative remedies.[82]

    **b.**   <u>42 U.S.C. § 12101</u>

Title 42, United States Code, Section 12101, marks the beginning of the Americans with Disabilities Act of 1990 ("ADA"). The ADA prohibits, *inter alia*, discrimination against qualified, disabled employees on the basis of an employee's disability. Title I of the ADA prohibits employment discrimination, and Title II prohibits discrimination in the provision of public services.[83] Title I's prohibition of discrimination in the context of employment is arguably relevant in this case.

McNealy alleges Motiva and the Shell Defendants discriminated against him on the basis of race and, of significance in this section, a number of disabilities. According to

---

Apr. 14, 2010) ("Plaintiff's Complaint does not allege sufficient facts to show that she has exhausted her administrative remedies, and Plaintiff has not offered any evidence or argument that exhaustion would be futile or inadequate."); *Stewart v. Tombone*, No. 3:97-cv-0129, 1998 WL 158657, at *2 (N.D. Tex. Mar. 24, 1998) ("While petitioner asserts futility, he fails to present evidence supporting such claim.").

[82] *See, e.g., Owens v. Sec. of Army*, 354 F. App'x 156, 157 (5th Cir. 2009); *Winegarner v. Dallas Cnty. Sch.*, No. 3:98-cv-2523, 1999 WL 325028, at *1 (N.D. Tex. May 19, 1999) (recognizing unexhausted claims must be dismissed without prejudice).

[83] *See, e.g., Decker v. Univ. of Houston*, 970 F. Supp. 575, 577 (S.D. Tex. 1997) ("Subchapter or Title II of the ADA governs public services and provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. . . . Title I provides that '[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.").

McNealy, due to the racial discrimination he experienced, he developed and was diagnosed with several disabilities, including post-traumatic stress disorder, anxiety, paranoia, dysthymic disorder, and depression.[84] McNealy identifies these disabilities in the third-amended complaint and alleges Motiva and the Shell Defendants discriminated against him because of those disabilities.[85]

As with causes of action under Title VII, a plaintiff must exhaust the available administrative remedies before pursuing any causes of action under the ADA in federal court. That is, "an employee must comply with the ADA's administrative prerequisites prior to commencing an action in federal court against her employer for violation of the ADA."[86] The administrative prerequisites under the ADA are the same as those under Title VII; the plaintiff must (1) file a charge with the EEOC and (2) obtain a right-to-sue letter prior to filing suit in federal court.[87] In this case, McNealy did not obtain a right-to-sue letter and, thus, McNealy did not exhaust his administrative remedies. Although McNealy argues exhaustion would have been futile because the EEOC "failed to investigate" his complaints,[88] it is McNealy's burden to establish the futility of exhaustion, a burden which McNealy has not carried. McNealy's argument that exhausting his administrative remedies would have been futile is not supported by any concrete factual allegations but, instead, is an unsupported, conclusory argument which this Court need not credit.[89]

---

[84] R. Doc. 114 at 11.

[85] R. Doc. 114 at 14.

[86] *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788 (5th Cir. 1996).

[87] *Id.* at 789. "Under the ADA, an aggrieved employee must exhaust his administrative remedies by filing a timely charge of discrimination with the EEOC and receiving a right to sue letter before filing suit in the district court." *Thibodeaux v. Transit Mix Concrete and Materials Co.*, 3 F. Supp. 2d 743, 744 (E.D. Tex. 1998) (citing *Dao, supra*).

[88] R. Doc. 186-1 at 10–11.

[89] *See, e.g., Calelly v. Conroe Indep. Sch. Dist.*, 193 F.3d 516 (5th Cir. 1999) (per curiam) (citing *Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 110 (5th Cir. 1992)).

For these reasons, McNealy's causes of action against Motiva and the Shell Defendants under the ADA must be dismissed without prejudice for his failure to exhaust his administrative remedies.

    c.    <u>42 U.S.C. § 1981</u>

Title 42, United States Code, Section 1981, prescribes an independent cause of action against private, non-governmental actors for discrimination on the basis of race.[90] Section 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Section 1981(b), in turn, defines the phrase "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

A motion to dismiss under Rule 12(b)(6) is designed to test the pleadings. Nevertheless, Motiva and the Shell Defendants attached McNealy's deposition to their reply memorandum in support of their motion to dismiss under Rule 12(b)(6).[91] To further complicate matters, McNealy attached Exhibits A, B, R, C, F, and E to his amended memorandum in opposition to the motion to dismiss.[92] These documents are outside the pleadings, and they have not been excluded by the Court. In this situation, Rule 12(d)

---

[90] *See, e.g., Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 462 (5th Cir. 2001); *see also Patterson v. McLean Credit Union*, 485 U.S. 617, 620 (1988); *Gallentine v. Housing Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 807–08 (E.D. Tex. 2013); *Charles v. Galliano*, No. 10-811, 2010 WL 3430519, at *4 (E.D. La. Aug. 26, 2010).
[91] R. Doc. 205-1.
[92] R. Doc. 222.

requires the Court to deny the Motiva and the Shell Defendants' motion to dismiss and, instead, treat the pleading as a motion for summary judgment under Rule 56.[93]

When converting a motion to dismiss to a motion for summary judgment under Rule 12(d), the Court must give the parties ample opportunity to present argument and summary judgment evidence. The parties may not have attached all the relevant documents and exhibits they would have attached if they had known the motion would be treated as a motion for summary judgment. Accordingly, pursuant to Rule 56(e)(1), the Court will allow the parties an opportunity to properly support their arguments and factual assertions and address the arguments and factual assertions raised by opposing counsel.

The Motiva and Shell Defendants motion to dismiss McNealy's Section 1981 claims under Rule 12(b)(6) is converted to a motion for summary judgment.

d.   42 U.S.C. § 1985(2) and (3)

McNealy seeks relief against Motiva and the Shell Defendants under Title 42, United States Code, Sections 1985(2) and (3).

As stated above with respect to USW International and the Local Union, Section 1985(2) protects parties and witnesses who seek to attend or testify in federal court.[94] Section 1985(2) is not applicable in this case. McNealy does not allege that Motiva or the Shell Defendants somehow violated his right to attend or testify in federal court. A review of the third-amended complaint reveals no such allegations. McNealy's claim with respect to Section 1985(2) is dismissed with prejudice.

---

[93] *See* Fed. R. Civ. P. 12(d).
[94] *See, e.g., Kush v. Rutledge*, 460 U.S. 719, 724 (1983); *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340 (5th Cir. 1981); *Bryant v. Miss. Military Dep't*, 519 F. Supp. 2d 622, 628–29 (S.D. Miss. 2007); *Turner v. Bowen*, No. 3:06-cv-576, 2007 WL 1295787, at *2 (S.D. Miss. May 1, 2007); *Ragsdale v. Classroom Teachers of Dallas*, No. 3:06-Ccv-863, 2007 WL 426637, at *4 n.5 (N.D. Tex. Feb. 5, 2007).

"Section 1985(3) prohibits private conspiracies to deprive persons of equal protection of the laws."[95] To state a claim for relief under Section 1985(3), a plaintiff must show, *inter alia*, "that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action."[96] To state a claim under Section 1985(3), the plaintiff must allege sufficient facts showing the defendants conspired to discriminate against the plaintiff on the basis of his or her race.[97]

As mentioned above, a motion to dismiss under Rule 12(b)(6) is designed to test the pleadings, but Motiva and the Shell Defendants attached McNealy's deposition to their reply memorandum in support of their motion to dismiss under Rule 12(b)(6)[98] and McNealy attached Exhibits A, B, R, C, F, and E to his amended memorandum in opposition to the motion to dismiss.[99] These documents are outside the pleadings, but have not been excluded by the Court. Rule 12(d) requires the Court to .[100] Rule 12(d) requires the Court to deny the Motiva and the Shell Defendants' motion to dismiss McNealy's Section 1985(3) claims and, instead, treat the pleading as a motion for summary judgment under Rule 56.[101]

The Motiva and Shell Defendants motion to dismiss McNealy's Section 1985(3) claim under Rule 12(b)(6) is converted to a motion for summary judgment.

---

[95] *Daigle v. Gulf State Utilities Co., Local Union Number 2286*, 794 F.2d 974, 978 (5th Cir. 1986).
[96] *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993) (internal quotations omitted) (quoting *Griffin v. Breckenridge*, 403 U.S. 825, 833 (1983)). *See also David v. Signal Intern., LLC*, No. 08-1220, 2012 WL 10759668, at *36 (E.D. La. Jan. 4, 2012).
[97] *See, e.g., Newsome v. EEOC*, 301 F.3d 227, 232 (5th Cir. 2002).
[98] R. Doc. 205-1.
[99] R. Doc. 222.
[100] *See* Fed. R. Civ. P. 12(d).
[101] *See* Fed. R. Civ. P. 12(d).

e.   42 U.S.C. § 1986

As stated above with respect to USW International and the Local Union, Section 1986 provides for liability against third parties based on their knowledge of Section 1985 violations. Section 1986 does not provide an independent cause of action, but instead requires the existence of a valid claim under Section 1985.[102] "A valid § 1985 claim is a prerequisite to a § 1986 claim."[103] Because Motiva and the Shell Defendants' motion to dismiss McNealy's Section 1985(3) has been converted to a motion for summary judgment, the Court must also convert the motion to dismiss with respect to Section 1986 into a motion for summary judgment.

The Motiva and Shell Defendants' motion to dismiss McNealy's Section 1986 claim under Rule 12(b)(6) is converted to a motion for summary judgment.

f.   29 U.S.C. § 1001, 1132

Title 29, United States Code, Section 1001, marks the beginning of the Employee Retirement Income Security Act ("ERISA"). ERISA was enacted "to promote the interests of employees and their beneficiaries in employee benefit plans."[104] McNealy seeks relief under two statutory sections of ERISA, namely Sections 1001 and 1132.[105] The only allegation in the third-amended complaint that can be construed as invoking the protections of ERISA reads: "Shell violated provisions under 29 U.S.C. § 1001 et seq., by failing to compensate his disability, and compelling him to withdraw his 401 K pension retirement funds."[106] In his amended memorandum in opposition to the Motiva and Shell

---

[102] *Bradt v. Smith*, 634 F.2d 796, 799 n.3 (5th Cir. 1981).
[103] *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000).
[104] *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). *See also Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985).
[105] R. Doc. 209-1 at 2.
[106] R. Doc. 114 at 24.

Defendants' motion to dismiss, McNealy states that his claim of failure to pay disability benefits is brought against Shell Oil Company, Met-Life, and Met-Life Insurance Company.[107] The Court will assume that McNealy's ERISA claim is brought only against his employer, Shell Oil, and Met-Life.[108]

Section 1001 sets forth the congressional findings and declaration of policy associated with ERISA and does not authorize a private cause of action.[109] McNealy in his third-amended complaint alleges that, "Shell violated provisions under 29 U.S.C. § 1001 et seq., by failing to compensate his disability, and compelling him to withdraw his 401 K pension retirement funds." [110]  In McNealy's amended memorandum in opposition to the motion to dismiss,[111] he states that he is making a breach of contract claim for failure to pay disability benefits, which is a claim under Section 1132(a)(1)(B).

Although the ERISA statute provides that the proper plaintiff in a retirement plan governed by ERISA is a "participant or beneficiary," the statute makes no mention of which parties are the proper defendants.[112] The federal appellate circuits are divided as to whether to permit an ERISA claim against parties other than the plan itself. The Fifth Circuit addressed the issue in *Musmeci v. Schwegmann Giant Super Markets, Inc.*, where the court held the employer was a proper defendant because it acted as both the plan administrator and the plan sponsor.[113] In this case, McNealy makes no allegations in any of his amended complaints that Shell Oil, his employer, was the plan administrator.

---

[107] Met-Life Insurance Company has been dismissed.
[108] McNealy's ERISA claim against Met-Life is dealt with in Section V, *infra*.
[109] *See* 29 U.S.C. § 1001.
[110] R. Doc. 114 at 24.
[111] R. Doc. 222.
[112] *See Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000).
[113] 332 F.3d 339 (5th Cir. 2003); *see also Wilson v. Kimberly-Clark Corp.*, 254 Fed. App'x 280, 287 (5th Cir. 2007) (quoting *Musmeci*, 332 F.3d at 350) ("[W]here the employer was both the 'plan administrator' and 'plan sponsor' and the relevant plan has 'no meaningful existence separate from' the employer, it was proper to name the employer as a defendant.").

Instead, McNealy alleges that he has a viable ERISA claim against Shell Oil because it "fail[ed] to compensate his disability, and compel[ed] him to withdraw his 401 K pension retirement funds."[114] Based on the Fifth Circuit's reasoning in *Musmeci*, the Court finds that McNealy fails to allege sufficient facts that Shell Oil is a proper party defendant because it is the plan administrator. As a result, McNealy's claims against Shell Oil under 29 U.S.C. § 1001, et seq. are dismissed with prejudice.

g.    29 U.S.C. § 141, *et seq.*

McNealy represents he is pursuing causes of action against Motiva and the Shell Defendants under 29 U.S.C. § 141, *et seq.* In particular, McNealy indicates his causes of action are under 29 U.S.C. § 151.

As discussed above with respect to USW International and the Local Union, the National Labor Relations Act of 1935, as amended by the Labor Management Relations Act, is codified at 29 U.S.C. § 141, *et seq.* Section 151 sets forth, generally, the "findings and declarations of policy" behind the National Labor Relations Act.[115] As noted above, McNealy cites Section 151 in his third-amended complaint. McNealy has failed to state a claim for relief under Title 29, United States Code, Section 151, against Motiva and the Shell Defendants. McNealy's claims under Section 151 are dismissed with prejudice.

The only other section of the National Labor Relations Act referenced in McNealy's third-amended complaint is Section 141.[116] McNealy alleges Motiva and the Shell Defendants "had an obligation under the collective bargaining agreement to enforce its terms and conditions, but breached their duty according to § 141."[117] The Court construes

---

[114] R. Doc. 114 at 24.
[115] *See Eastex, Inc. v. N.L.R.B.*, 437 U.S. 556, 565 n.14 (1978); *N.L.R.B. v. Brown Paper Mill Co.*, 108 F.2d 867, 870 (5th Cir. 1940).
[116] R. Doc. 114 at 1, 22.
[117] R. Doc. 114 at 22.

McNealy's causes of action under Section 141 as claims under Section 301 of the Labor Management Relations Act, as Section 141 is the first statutory section of the National Labor Relations Act, as amended by Section 301 of the Labor Management Relations Act.[118] McNealy's claims against Motiva and the Shell Defendants under 29 U.S.C. § 141 are, in reality, claims under Section 301 of the Labor Management Relations Act for breach of a collective bargaining agreement, or CBA.

As noted above, Section 301 provides an individual employee with a federal cause of action against his or her *employer* for breach of a collective bargaining agreement.[119] An employee's cause of action against a *union* for breach of the duty of fair representation is implied under Section 301.[120] "Because of the intricate relationship between the duty of fair representation and the enforcement of a collectively bargained contract, the two causes of action have become 'inextricably interdependent' and known as a 'hybrid § 301/fair representation suit.'"[121]

An "indispensable predicate" to a plaintiff's Section 301 claim against an employer is an unfair representation claim against his or her union.[122] Stated differently, "[i]t is an 'indispensable predicate to a section 301 claim against the employer to establish that the union has breached its duty of fair representation."[123] "[A] plaintiff must prevail upon his

---

[118] *See, e.g., Thomas v. LTV Corp.*, 39 F.3d 611, 614 (5th Cir. 1994).

[119] *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 287 (5th Cir. 1988) (citations omitted).

[120] *Id.* (citing *Vaca v. Sipes*, 386 U.S. 171 (1967)).

[121] *Id.* at 287–88 (quoting *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164–65 (1983)). "The interdependency arises from the nature of the collective bargaining agreement. If the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted the procedure. Further, he is bound by the procedure's result unless he proves the union breached its duty of fair representation." *Daigle v. Gulf State Util. Co.*, 794 F.2d 974, 977 (5th Cir. 1986) (citations omitted).

[122] *Daigle v. Gulf State Util. Co.*, 704 F.2d 974, 977 (5th Cir. 1986) (quotations omitted). *See also Landry v. The Cooper/T. Smith Stevedoring Co., Inc.*, 880 F.2d 846, 851 (5th Cir. 1989).

[123] *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 172 (5th Cir. 1989). "Establishing the Union's breach of duty of fair representation is an 'indispensable predicate' for a section 301 action against the [employer]." *Sawyer v. Am. Postal Workers Union, AFL-CIO*, No. 3:09-cv-1780, 2011 WL 6029925, at *6 (N.D. Tex. Nov. 30, 2011) (citing *Thomas v. LTV Corp.*, 39 F.3d 611, 621–22 (5th Cir. 1994)).

unfair representation claim before he may even litigate the merits of his § 301 claim against the employer."[124]

The Court has converted the USW International and the Local Union's motions to dismiss under Rule 12(b)(6) to motions for summary judgment. As a result, the Motiva and Shell defendants' motion to dismiss McNealy's Section 141 claims under Rule 12(b)(6) must also be converted to a motion for summary judgment.

> h.    Article III, Section 2, Clause 1 of the United States Constitution

Article III, Section 2, Clause 1, of the United States Constitution defines the judicial power of federal courts. Article III, Section 2, Clause 1, does not provide a private right of action. Any cause of action McNealy attempts to assert under Article III, Section 2, Clause 1, of the United States Constitution must be dismissed with prejudice.

## III.   Saudi Refining, Inc. (R. Doc. 138, 212)

Saudi Refining, Inc. ("Saudi Refining") seeks summary judgment dismissing McNealy's claims.

McNealy pursues causes of action against Saudi Refining under (1) 42 U.S.C. § 1981; and (2) 42 U.S.C. § 1985(2) and (3).[125] McNealy also argues Saudi Refining is liable under the state-law theory of vicarious liability for the intentional acts and omissions of Motiva's administrators, managers, staff, agents, representatives, and successors.[126]

McNealy's claims against Saudi Refining are based entirely on Saudi Refining's 50 percent ownership interest in Motiva Enterprises, LLC,[127] and McNealy's argument that Saudi Refining is responsible for the actions of its alter ego, Motiva.[128] In the third-

---

[124] *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 67 (1981).
[125] R. Doc. 209-1 at 3.
[126] R. Doc. 209-1 at 3.
[127] R. Doc. 114 at 5.
[128] Doc. 190-2 at 3.

amended complaint, McNealy alleges that Saudi Refining and the Shell Defendants "equally own and operate Motiva Enterprises, LLC[,] through [a] joint venture."[129] McNealy alleges Saudi Refining, as part-owner of Motiva, is vicariously liable for Motiva's "intentional acts / omissions" and the "intentional nature causing injuries or damages" he sustained.[130]

In support of its motion for summary judgment,[131] Saudi Refining attaches its statement of undisputed facts,[132] and the declaration of Darryl R. Wong.[133] Wong has been employed by Saudi Refining since 2007 and his duties and responsibilities include oversight of Saudi Refining's investment in Motiva.[134] Wong declares that Saudi Refining did not employ any workers at the Motiva refinery in Norco; that Motiva, Shell Chemical, L.P., and Shell Oil are entirely separate entities from Saudi Refining; that Motiva has its own employees and runs its Norco refinery without any day-to-day involvement by Saudi Refining; that Saudi Refining does not have any role in hiring, direction of work, discipline, or firing of Motiva employees at the refinery; that Saudi Refining is not a party to a contract with McNealy or the Union; that Saudi Refining was not aware of and played no role in the incidents alleged by McNealy; and that Saudi Refining had no involvement in the Met-Life benefits plan or the determination of benefits under that plan.[135]

McNealy argues the declaration of Wong is unsworn and, as a result, may not be considered on summary judgment. McNealy is incorrect, as the declaration was given under penalty of perjury that the statements therein are true and correct. The Fifth Circuit

---

[129] R. Doc. 114 at 16.
[130] R. Doc. 114 at 17.
[131] R. Doc. 138-2.
[132] R. Doc. 138-3.
[133] R. Doc. 138-2.
[134] R. Doc 138-3 at 1, n.1.
[135] R. Doc. 138-2 at 1–3.

has held that such a statement may be considered on summary judgment. [136] McNealy also disputes most of Saudi Refining's Statement of Undisputed Facts,[137] but offers no competent summary judgment evidence to establish that the facts as stated by Saudi Refining are in dispute.[138] The Court finds that there are no material facts in dispute with respect to the basis of Saudi Refining's motion for summary judgment.

The only remaining issue is whether Saudi Refining is entitled to judgment as a matter of law that Saudi Refining is not liable for the alleged conduct of Motiva or its employees as a result of its ownership interest in Motiva, and that there are no grounds for holding Saudi Refining liable because it had no involvement in the acts of which McNealy complains.

An owner of a limited liability company may not be held liable for any debt, obligation, or liability of the limited liability company based solely on its status as an owner, and it is not a proper party to an action against the limited liability company based solely on its status as an owner.[139] The same is true under federal and state employment discrimination laws. Courts have routinely recognized the important public policy considerations underlying corporate separateness and refused to pierce the corporate veil

---

[136] *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306–07 (5th Cir. 1988) (citing 28 U.S.C. § 1746).

[137] R. Doc. 138-3.

[138] R. Doc. 190-2.

[139] *See* La. Rev. Stat. § 12:1320 (B) ([N]o member, manager, employee or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company."); La. Rev. Stat. § 12:1320 (C) (A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company."). Motiva is a Delaware corporation and Delaware law, like Louisiana law, also limits the liability of LLC members for the debts, obligations, and liabilities of the LLC. *See* 6 Del. C. § 18-303(a) ("The debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.").

in the employment discrimination context.[140] The doctrine of limited liability "creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees."[141] Thus, "only evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary – domination similar to that which justifies piercing the corporate veil – is sufficient to rebut this presumption, and to permit an inference that the parent corporation was a final decision-maker in its subsidiary's employment decision."[142]

The Fifth Circuit considers four factors in determining whether an entity related to an employer may be liable under Title VII as a joint employer, including (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.[143] The second of these four factors, however, is the key factor, "such that courts have focused exclusively on one question: which entity made the final decisions regarding employment matters relating to the person claiming discrimination." [144] The courts of this district have used the same analysis when addressing the liability of an owner of a limited liability company under federal and state employment discrimination laws.[145]

It is undisputed that Saudi Refining was not McNealy's employer; that Saudi Refining did not hire, direct the work of, supervise, or fire Motiva's employees; and that

---

[140] *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 616-17 (5th Cir. 1999) (finding that parent company was not liable for alleged employment discrimination claims against subsidiary); *Bass v. Lifecare Holdings, Inc.*, No. 99-1864, 2000 WL 377815, at *3–4 (E.D. La. Apr. 12, 2000) (same); *Wilkerson v. USI Gulf Coast Inc.*, No. 01-2748, 2002 WL 1268405, at *3 (E.D. La. Jun. 4, 2002) (refusing to find employer's holding company liable for alleged employment discrimination by employer).

[141] *Bass*, 2000 WL 377815, at *3–4 (quoting *Lucky v. FoxMeyer Health Corp.,* 129 F.3d 773, 777 (5th Cir. 1997)).

[142] *Bass*, 2000 WL 377815, at *3–4.

[143] *Trevino v. Celanese Corp.*, 710 F.2d 397 (5th Cir. 1983).

[144] *Skidmore*, 188 F.3d at 617.

[145] *See, e.g.*, *Bass*, 2000 WL 377815.

Saudi Refining had no involvement in the decisions to discipline and terminate McNealy or any of the other conduct of which McNealy complains. It is also undisputed that Saudi Refining was not a party to the collective bargaining agreement between Motiva and the Union.[146]

Saudi Refining is entitled to summary judgment and the 42 U.S.C. § 1981, 42 U.S.C. § 1985(2) and §1985(3) claims against it are dismissed with prejudice.

## IV.  Equal Employment Opportunity Commission (R. Doc. 146)

The Equal Employment Opportunity Commission (the "EEOC") moves to dismiss McNealy's claims against it under Rule 12(b)(1) and Rule 12(b)(6).

McNealy alleges he filed complaints with the EEOC in 2012, 2013, and 2015, but the EEOC "failed to investigate" his complaints.[147] McNealy thus alleges the EEOC denied him his right to petition the court under the First Amendment to the United States Constitution.[148] McNealy also alleges the EEOC had a "duty to investigate, but failed to do so," in violation of the due process clause of Fifth Amendment.[149] McNealy's counsel has acknowledged that his causes of action against the EEOC are for violations of (1) the First Amendment's petition and assembly clauses; (2) the Fifth Amendment's due process clause; (3) the Federal Tort Claims Act, 28 U.S.C. § 1346; and (4) La. Civ. Code art. 2315.[150]

### a.    The First & Fifth Amendments to the United States Constitution

McNealy asserts causes of action for violations of the First and Fourteenth Amendments against the EEOC. The EEOC correctly points out that McNealy's claims

---

[146] R. Doc. 138-3.
[147] R. Doc. 114 at 13.
[148] R. Doc. 114 at 13.
[149] R. Doc. 114 at 13.
[150] Counsel for Plaintiff agreed that the chart attached to the Minute Entry of the status conference held on July 8, 2016 included all causes of action against each defendant. R. Doc. 209-1 at 4.

against it are barred under the doctrine of sovereign immunity.[151] "The basic rule of federal sovereign immunity is that the United States cannot be sued without the consent of Congress."[152] This immunity from suit extends to the agencies and officers of the United States, such as the EEOC.[153] Thus, suits against agencies of the United States are barred, unless there is a waiver of sovereign immunity. "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in the statutory text and will not be implied."[154] The "[p]laintiff bears the burden of showing Congress's unequivocal waiver of sovereign immunity."[155] Congress has not waived the sovereign immunity of the United States or its agencies with respect to constitutional violations.[156] Thus, the United States, the agencies of the United States, including the EEOC, and federal officers or employees acting in their official capacities, are immune from suit for federal constitutional violations under the doctrine of sovereign immunity.[157] These

---

[151] R. Doc. 146-1 at 6.

[152] *Block v. North Dakota ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 287 (1983).

[153] *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963). *See also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). For the proposition that the EEOC is an agency of the United States for purposes of sovereign immunity, see *Newsome v. E.E.O.C.*, 301 F.3d 227, 232–33 (5th Cir. 2002).

[154] *Lane v. Pena*, 518 U.S. 187, 192 (1996). *See also Soudavar v. F.A.A.*, 45 F. App'x 323 (5th Cir. 2002) (quoting *Interfirst Bank Dallas, N.A. v. United States*, 769 F.2d 299, 310 (5th Cir. 1985)) (internal quotation marks omitted) ("Waiver of the United States' sovereign immunity must be expressly stated by congress and should not be inferred.").

[155] *St. Tammany Parish ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) (citations omitted). *See also Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009); *Alcorn v. Shinseki*, No. 09-3744, 2009 WL 3833975, at *2 (E.D. La. Nov. 10, 2009) ("The complaint at no point mentions a waiver of sovereign immunity for this type of suit, much less an unequivocal one, and he has not responded to this motion to dismiss. Alcorn has therefore not carried his burden of demonstrating 'Congress's unequivocal waiver of sovereign immunity,' and the Court will dismiss the action for want of subject matter jurisdiction.").

[156] *Interfirst Bank Dallas, N.A. v. United States*, 769 F.2d 299, 309 (5th Cir. 1985) ("The Constitution does not waive the Government's sovereign immunity in a suit for damages. . . . Suits for damages against the United States based on the Constitution are not contemplated by *Bivens* and its progeny."). *See also Wheeler*, 2013 WL 1091242, at *5 (citing *Interfirst*) ("[T]he United States has not waived its sovereign immunity for constitutional torts . . . .").

[157] "A long line of cases holds that constitutional claims for damages may not be brought against the federal government itself, but may proceed only against government officials on a *Bivens* theory." James E. Pfander, David Baltmanis, *Rethinking Bivens: Legitimacy and Constitutional Adjudication*, 98 GEO. L.J. 117, 135 (2009) (citing cases).

claims against the EEOC must be dismissed with prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction.

The Court notes that, in any event, the First & Fifth Amendments in-and-of-themselves provide no independent cause of action.[158] Instead, Section 1983 is generally the appropriate vehicle to enforce rights guaranteed by the Constitution.[159] Section 1983, however, only "provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of *state law*."[160] Section 1983 does not provide a cause of action against the federal government or individuals acting under color of federal law. The Supreme Court's decision in *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics* is the federal counterpart to Section 1983, as *Bivens* extends the protections afforded by Section 1983 to parties injured by federal actors, who are not otherwise liable under Section 1983.[161] The Court notes, however, that "*Bivens* authorizes suits only against individual federal officers, not against the United States."[162] In this case, McNealy has no Section 1983 claim against the United States or its agencies and has not

---

[158] *Berger v. City of New Orleans*, 273 F.3d 1095 (5th Cir. 2001) (citing *Hearth, Inc. v. Dep't of Public Welfare*, 617 F.2d 381, 382 (5th Cir. 1980)). *See also Garrett v. City of Houston, Tex.*, 102 F. App'x 863, 864 (5th Cir. 2004).

[159] *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (noting Section 1983 provides a mechanism for enforcing individual rights ensured by federal statutes and the United States Constitution).

[160] *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012) (citing 42 U.S.C. § 1983) (emphasis added).

[161] *Abate*, 993 F.2d at 110–11. *See also Solesbee v. Nation*, No. 3:06-cv-0333, 2008 WL 244343, at *7 (N.D. Tex. Jan. 29, 2008) (internal quotation marks omitted) (citations omitted) ("*Bivens*, of course, is the counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties injured by federal actors."); *see also Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

[162] *Wheeler v. Ceniza*, No. 3:12-cv-1898, 2013 WL 1091242, at *5 (N.D. Tex. Mar. 15, 2013) (citing *Williamson v. United States Dep't of Agriculture*, 815 F.2d 368, 380 (1987) (noting *Bivens* action only applies against federal officers "in their individual capacities . . . . [while t]he United States and its officers in pursuit of their official duties remain protected by sovereign immunity")). "A *Bivens* claim is a judicially created counterpart to a 42 U.S.C. § 1983 civil rights action and is properly brought only against federal officials who have allegedly denied a plaintiff's constitutional rights, in their individual capacities. An extension of a *Bivens* action to federal agencies of the Federal Government is not supported by the logic of *Bivens*." *Brown v. Federal Bureau of Investigation*, No. 5:11-cv-63, 2012 WL 1038809, at *1 (S.D. Miss. Feb. 1, 2012) (citations omitted).

asserted a *Bivens* action against any federal officers or employees in their individual capacities. To the extent that the Plaintiff brings Section 1983 claims against the EEOC, even if the United States had waived its sovereign immunity, those claims would be dismissed with prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction.

### b.  The Federal Tort Claims Act

McNealy argues the "Federal Tort Claims Act ("FTCA") waives [the] sovereign immunity of the government, and allows [suits] for damages."[163] It is well-accepted the FTCA is the exclusive remedy for tort suits against the United States, and the FTCA thus operates as a limited waiver of sovereign immunity.[164] The FTCA's waiver of sovereign immunity is, however, subject to several exceptions.[165] As a general rule, "[i]t is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant" in an FTCA suit.[166] Thus, McNealy does not have a valid FTCA claim against the EEOC. The FTCA claim against the EEOC must be dismissed with prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction.

## V.  **Metropolitan Life Ins. Co. (R. Doc. 210)**

Met-Life seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Met-Life argues McNealy's claims against it should be dismissed with prejudice on summary judgment, as there are no genuine issues of material act, and Met-Life is entitled to judgment as a matter of law. McNealy's causes of action against Met-

---

[163] R. Doc. 151-1 at 1.

[164] *Willougby v. United States ex rel. United States Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) (citing 28 U.S.C. § 2679(a)).

[165] *See, e.g., Davila v. United States*, 713 F.3d 248, 256 (5th Cir. 2013).

[166] *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1998). *See also Talavera v. United States*, No. 4:14-cv-03329, 2016 WL 4398678, at *4 (S.D. Tex. Aug. 17, 2016); *Valentine v. Veterans Affairs*, No. 3:16-cv-1221, 2016 WL 4257444, at *2 (N.D. Tex. July 13, 2016) ("[A]n FTCA claim brought against a federal agency or employee rather than the United States shall be dismissed for want of jurisdiction."); *Schexnayder v. St. Charles Parish*, Nos. 12-416, 12-542, 2012 WL 1357784, at *2 (E.D. La. Apr. 19, 2012); *Michalik v. Hermann*, No. 99-3496, 2001 WL 434489, at *1 (E.D. La. Apr. 26, 2001).

Life are for violations of (1) 29 U.S.C. § 1001; (2) La. Civ. Code art. 1906; (3) La. Rev. Stat. § 22:655; (4) La. Rev. Stat. 22:1269; (5) La. Rev. Stat. 22:1892; and (6) La. Rev. Stat. § 22:1973. [167]

Title 29, United States Code, Section 1001, marks the beginning of the Employee Retirement Income Security Act ("ERISA"). Section 1001 sets forth the congressional findings and declaration of policy associated with ERISA and, itself, does not authorize a private cause of action. The Court has assumed McNealy intends to pursue a cause of action under Section 1132(a)(1)(B). Section 1132(a)(1)(B) authorizes a private cause of action by an ERISA participant or beneficiary "to recover benefits due to him, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." [168] A claimant who is denied benefits under an ERISA plan must exhaust all administrative remedies afforded by the plan before instituting litigation for recovery of benefits. [169] A claimant's failure to exhaust is proper grounds for dismissal. [170]

In this case, it is undisputed that Met-Life issued a group insurance policy to Shell Oil Company, [171] and the long-term disability benefits under the policy are governed by ERISA. [172] It is also undisputed that McNealy participated in and was covered by the group insurance policy, [173] and that McNealy submitted a claim for long-term disability benefits

---

[167] In his memorandum in opposition to Met-Life's motion for summary judgment, the Plaintiff states that he is bringing a claim against Met-Life under 29 U.S.C. Section 502(a). R. Doc. 220-1 at 1. Counsel for Plaintiff agreed that the chart attached to the Minute Entry of the status conference held on July 8, 2016 included all causes of action against each defendant. No claim against Met-Life under 29 U.S.C. Section 502(a) is listed, Doc. 209-1 at 5,  and such a claim is not addressed herein.

[168] 29 U.S.C. § 1132(a)(a)(B).

[169] *Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 256 (5th Cir. 2005) (per curiam).

[170] *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 33 (5th Cir. 1993).

[171] R. Doc. 210-3 at 1, ¶1; R. Doc. 220-3 at 1, ¶1.

[172] R. Doc. 210-3 at, ¶3; R. Doc. 220-3 at 1–2, ¶3. Plaintiff's short-term disability benefits were paid. He was paid long-term disability benefits for some period of time but those benefits were terminated on March 25, 2014. R. Doc. 210-2. This termination is the basis for Plaintiff's ERISA claim in this action. To the extent Plaintiff makes claims against Met-Life based on Louisiana law, rather than ERISA, those claims are not address in this section.

[173] R. Doc. 210-3 at 1, ¶4; R. Doc. 220-3 at 2, ¶4.

under the policy. [174] The parties dispute, however, whether McNealy exhausted the administrative remedies available under the group policy with respect to his long-term disability claim. [175] In support of its motion for summary judgment, Met-Life offers a declaration executed by Matthew Hallford, a Met-Life litigation specialist. [176] The declaration states (1) McNealy submitted a claim for long-term disability benefits under the group insurance policy, (2) the claim was terminated by Met-Life on March 25, 2014, and (3) McNealy did not administratively appeal the termination.[177] Met-Life argues it has negated an essential element of McNealy's claim as he has not exhausted his administrative remedies. McNealy disputes Met-Life's representation that he did not appeal the termination of his long-term disability benefits claim. [178] In McNealy's statement of undisputed facts, he states that he forwarded a letter to Met-Life indicating his "intent to appeal" the termination of his long-term disability claim. [179] Hallford declares in his affidavit that the documents attached are included in the administrative record for McNealy.[180] Included in the attachments is the letter from McNealy to Met-Life dated March 24, 2014[181] and the letter from Met-Life to McNealy dated March 25, 2014.[182] Both letters reference Claim # 731209111106, which is the Plaintiff's claim for long-term disability benefits. In reality, this is not a factual dispute, but an issue of whether Met-Life

---

[174] R. Doc. 210-3 at 1, ¶5; R. Doc. 220-3 at 2, ¶5.
[175] R. Doc. 210-3 at 2, ¶¶6−8; R. Doc. 220-3 at 2, ¶¶6−8.
[176] R. Doc. 210-2 at 1−2 (Declaration of Matthew Hallford). Although this declaration is unsworn, Hallford does declare under penalty of perjury that the statements contained therein are true and correct.  The Fifth Circuit has held that such a statement may be considered on summary judgment. *See Nissho-Iwai Am. Corp*, 845 F.2d at 1306−07.
[177] R. Doc. 210-2 at 2 (Declaration of Matthew Hallford).
[178] *See* R. Doc. 220-3 at 2.
[179] R. Doc. 220-2 at 3.
[180] R. Doc. 210-2 at 2, at M-0332 and M-0335, respectively.
[181] R. Doc. 210-2 at 58.
[182] R. Doc. 210-2 at 59−60.

is entitled to judgment as a matter of law. The resolution of this dispute turns on whether McNealy's March 24, 2014 letter constituted an appeal of the termination of his benefits.

Met-Life attached the Shell Long Term Disability Benefits Plan/SPD to the declaration of Matthew Hallford. [183] Met-Life argues that its March 25, 2014 letter informed Plaintiff of the plan's requirement that his written appeal be filed within 180 days of his receipt of the denial and that it include "[a]n explanation of why you are appealing the initial determination."[184] In its letter, Met-Life also requested the following additional information from the Plaintiff: medical records from September 2013 which are to include physical examination findings; notes to address any improvements, restrictions, and limitations that would prevent a return to work due to sleep apnea from all treating providers; and any additional comments, documents, records or other information relating to the claim that the Plaintiff deemed appropriate for Met-Life to give his appeal proper consideration.[185] Met-Life argues the Plaintiff's March 24, 2014 letter was not sufficient to satisfy the requirements of the plan with respect to the filing of an appeal, as it was only notice of an intent to appeal, did not contain an explanation of why he was appealing the determination, and did not include the information requested by Met-Life. The Plaintiff argues his letter satisfied the requirements of the plan and exhausted his administrative remedies and that the additional information requested by Met-Life was not necessary, as Met-Life already had a medical release signed by him and medical information sufficient to justify his claim.[186]

---

[183] R. Doc. 210-1 at 3.
[184] R. Doc. 210-2 at 38.
[185] R. Doc. 210-1 at 4.
[186] R. Doc. 2210-1 at 8.

The Fifth Circuit has held that notice of the intent to file an appeal is not an appeal and, instead, is merely the expression of an intent to appeal.[187] The Fifth Circuit held further in the *Swanson* case that the failure to include factual or substantive statements in a notice of appeal provides nothing for the insurer to consider on appeal and does not constitute an appeal.[188] This Fifth Circuit decision is on point with the issue now before this Court.

The Court finds that Plaintiff did not exhaust his administrative remedies with respect to Met-Life's termination of his benefits claim. His March 24, 2014 letter was notice of an intent to appeal rather than an appeal, did not contain an explanation of why he was appealing the determination, and did not include the information requested by Met-Life. Because McNealy failed to exhaust his administrative remedies, he is unable to maintain a cause of action in this court against Met-Life under Section 1132 for the denial of ERISA benefits.

The sole question remaining is whether McNealy's Section 1132 claim against Met-Life should be dismissed with prejudice or without prejudice. "While failure to exhaust administrative remedies usually results in dismissal without prejudice, when exhaustion is no longer possible, dismissal may be with prejudice."[189] Met-Life's termination of benefits letter is dated March 24, 2014. It is clear that the applicable time limit for exhaustion of McNeal's administrative remedies has passed. As a result, McNealy's Section 1132 claim against Met-Life is dismissed with prejudice.

---

[187] *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1018–19 (5th Cir. 2009).

[188] *Id.* at 1019. In *Holmes v. Proctor & Gamble Disability Benefit Plan*, 228 F. App'x 377 (5th Cir. 2007), an unpublished per curiam opinion, the Fifth Circuit held notice of intent to appeal did not amount to substantial compliance with a plan's procedures.

[189] *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007).

## VI.   <u>All Defendants (State Law Claims)</u>

McNealy's other claims against the Defendants are state law claims over which the Court possesses only supplemental jurisdiction.

Title 28, United States Code, Section 1367(c), provides that district courts may decline to exercise supplemental jurisdiction over state law claims if, *inter alia*, "the district court has dismissed all claims over which it has original jurisdiction."

Because the Court converted certain of Defendants' motions to summary judgment motions, the Court defers ruling on whether to exercise supplemental subject matter jurisdiction on McNealy's state claims until after the Court rules on the motions for summary judgment.

## <u>CONCLUSION</u>

For the foregoing reasons, **IT IS ORDERED** that the pending dispositive motions filed by the Defendants are **GRANTED IN PART** and **DEFERRED IN PART**.[190]

**IT IS FURTHER ORDERED** that McNealy's federal claims against USW International and the Local Union under 42 U.S.C. Section 301; 42 U.S.C. § 1985(3); 42 U.S.C. § 1986; and 29 U.S.C. § 141 are **DEFERRED** and converted to motions for summary judgment.[191] **IT IS FURTHER ORDERED** that McNealy's federal claims against USW International and the Local Union under 42 U.S.C. § 1985(2) and 29 U.S.C. § 151 are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that McNealy's federal claims against Motiva and the Shell Defendants under 42 U.S.C. § 1985(2); 29 U.S.C. § 1001 and 1132; 29 U.S.C. § 151; and Article III, Section 2, Clause 1 of the United States Constitution are **DISMISSED**

---

[190] R. Docs. 117, 118, 121, 138, 146, 210, 215, 216.
[191] At the status conference scheduled on October 28, 2016, the Court will discuss whether additional discovery is needed and the timing of the presentation of additional briefing and materials to the Court.

**WITH PREJUDICE**. McNealy's Title VII and ADA claims against Motiva and the Shell Defendants are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies. McNealy's claims under 42 U.S.C. § 1981; 42 U.S.C. § 1985(3); 42 U.S.C. § 1986; and 42 U.S.C. § 141 are **DEFERRED** and converted to motions for summary judgment.[192]

IT IS FURTHER ORDERED that McNealy's federal claims against Saudi Refining, Inc., under 42 U.S.C. § 1981 and 42 U.S.C. § 1985(2) and (3) are **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED that McNealy's federal claims against the EEOC under the First and Fifth Amendments to the United States Constitution and the Federal Tort Claims Act are **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED that McNealy's federal claim against Met-Life under 29 U.S.C. § 1001 is **DISMISSED WITH PREJUDICE** for failure to exhaust administrative remedies.

IT IS FURTHER ORDERED that the Court **DEFERS** ruling on McNealy's state law claims until after its rulings on the motions for summary judgment filed in accordance with the Court's scheduling order.[193]

**New Orleans, Louisiana, this 17th day of October, 2016.**

*Susie Morgan*

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[192] At the status conference scheduled on October 28, 2016, the Court will discuss whether additional discovery is needed and the timing of the presentation of additional briefing and materials to the Court.
[193] R. Doc. 206.