UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NEWTON MCNEALY,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | NO. 14-2181 |
| DARRYL J. BECNEL, ET AL.,<br>    Defendants | SECTION: "E" (2) |

## ORDER AND REASONS

Before the Court are Motions for Summary Judgment filed by Defendants United Steelworkers Union, Local 750 ("Local Union")[1] and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO ("USW International")[2]. Plaintiff Newton McNealy opposes the Local Union's and USW International's motions for summary judgment.[3] For the following reasons, the Local Union and USW International's motions for summary judgment are **GRANTED**.

## PROCEDURAL BACKGROUND

McNealy originally filed this civil action on September 22, 2014, and has been granted leave of court on multiple occasions to amend his complaint.[4] On December 18, 2015, the Local Union[5] and USW International[6] filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which were amended on August 10, 2016.[7] On October 17, 2016, the Court issued its Order regarding the then pending

---

[1] R. Doc. 277.
[2] R. Doc. 280.
[3] R. Doc. 311.
[4] McNealy's complaints include Record Document 1 (Complaint), Record Document 37 (Amended and Supplemental Complaint), Record Document 60 (Second-Amended Complaint), Record Document 114 (Third-Amended Complaint), and Record Document 260 (Fourth-Amended Complaint).
[5] R. Doc. 118.
[6] R. Doc. 117.
[7] R. Docs. 215, 216.

1

dispositive motions filed by the Defendants in this case.[8] In its Order, the Court dismissed Plaintiff's Section 1985(2) claim and converted the Local Union's and USW International's 12(b)(6) motions to dismiss with respect to Plaintiff's Section 1985(3), 1986, and 301 of the Labor Management Relations Act ("LMRA") into motions for summary judgment.[9] The Court deferred ruling on whether to exercise supplemental subject matter jurisdiction over McNealy's state law claims until after the Court ruled on the Defendants' motions for summary judgment.[10] On November 9, 2016, the Local Union and USW International filed motions to reconsider regarding the Court's October 17, 2016 Order arguing that the state law claims against them for breach of contract and negligence are preempted by Section 301 of the LMRA.[11] On November 17, 2016, the Court granted the Local Union's and USW International's motions for reconsideration and amended its October 17, 2016 Order to dismiss Plaintiff's state law breach of contract and tort claims against both defendants.[12] On February 7, 2017, pursuant to the Court's Order,[13] the Local Union and USW International filed their respective motions for summary judgment dismissing the Plaintiff's Fourth Amended Complaint.[14]

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] "An issue is material if its resolution could affect the outcome of the action."[16]

---

[8] R. Doc. 237.
[9] *See id.* The Court also found that Plaintiff's claims under 29 U.S.C. § 141, *et seq.*, of the LMRA are in reality, claims under Section 301 of the LMRA for breach of the duty of fair representation. *Id.* at 13-14.
[10] *Id.* at 38.
[11] R. Docs. 257, 258.
[12] R. Doc. 265.
[13] R. Doc. 267.
[14] R. Docs. 277, 280.
[15] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[16] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[17] All reasonable inferences are drawn in favor of the nonmoving party.[18] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[19]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[20] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[21]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[22] When proceeding under the first option, if the

---

[17] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[18] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[19] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[20] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[21] *Celotex*, 477 U.S. at 322–24.
[22] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential

nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[23] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[24] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[25] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[26] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[27]

---

element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[23] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[24] *Celotex*, 477 U.S. at 332–33.
[25] *Id.*
[26] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[27] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[28]

## LAW AND ANALYSIS

McNealy asserts causes of action against USW International and the Local Union under (1) Section 301 of the Labor Management Relations Act, for breach of the duty of fair representation;[29] (2) 42 U.S.C. § 1985(3); and (3) 42 U.S.C. § 1986.[30]

McNealy alleges USW International and the Local Union breached their duty of fair representation implied under Section 301 of the Labor Management Relations Act.[31] Section 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185, has been recognized by the Supreme Court of the United States as a "potent source of federal labor law."[32] Section 301 provides an individual employee with a federal cause of action against his or her *employer* for breach of a collective bargaining agreement.[33] An employee's cause of action against a *union* for breach of the duty of fair representation is implied under Section 301.[34] "Because of the intricate relationship between the duty of fair

---

[28] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[29] McNealy also alleges claims against the Unions pursuant to 29 U.S.C. § 141 *et seq. See* R. Doc. 260 at 13. As the Court explained in its October 17, 2016 Order and Reasons, "McNealy's claims against USW International and Local Union under 29 U.S.C. § 141 are, in reality, claims under Section 301 of the Labor Management Relations Act for breach of the duty of fair representation." R. Doc. 237 at 13-14.
[30] R. Doc. 260. *See* also R. Docs. 237, 245 at 2, 265.
[31] *See, e.g., Electrical Workers v. Foust*, 442 U.S. 42, 46 n.8 (1979) ("The duty of fair representation is . . . implicit in the National Labor Relations Act."). The Labor Management Relations Act amended the National Labor Relations Act. *See generally Smith v. Int'l Org. of Masters, Mates and Pilots*, 296 F.3d 380 (5th Cir. 2002).
[32] *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990).
[33] *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 287 (5th Cir. 1988) (citations omitted).
[34] *Id.* (citing *Vaca v. Sipes*, 386 U.S. 171 (1967)).

representation and the enforcement of a collectively bargained contract, the two causes of action have become 'inextricably interdependent' and known as a 'hybrid § 301/fair representation suit.'"[35]

McNealy also alleges USW International and the Local Union violated Sections 1985(3) and 1986 of Title 42 of the United States Code by conspiring to deprive him of his right to redress his job-related grievances; by failing to protect him from harm, harassment, and a hostile work environment; and by discriminating against him on account of his race.[36]

I. Claims against USW International

   a. Section 301 of the Labor Management Relations Act

In his Fourth Amended Complaint, Plaintiff alleges USW International committed an unfair labor practice when it restrained or coerced McNealy in the exercise of his rights under the Labor Management and Relations Act.[37] According to Plaintiff, USW International, "with actual knowledge of the discriminatory act and crimes against McNealy refused to take any action on behalf of McNealy. Instead, the Union assisted the employers in an investigation against McNealy."[38]

Plaintiff's Section 301 claims arise out of a collective bargaining agreement executed by Motiva Enterprises LLC ("Motiva"), the Local Union, and USW International. USW International argues it is undisputed that Plaintiff had no interaction with USW

---

[35] *Id.* at 287–88 (quoting *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164–65 (1983)). "The interdependency arises from the nature of the collective bargaining agreement. If the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted the procedure. Further, he is bound by the procedure's result unless he proves the union breached its duty of fair representation." *Daigle v. Gulf State Util. Co.*, 794 F.2d 974, 977 (5th Cir. 1986) (citations omitted).
[36] R. Doc. 260 at ¶ 72.
[37] *Id.* at ¶ 108.
[38] *Id.*

International.[39] In support, USW International points to Plaintiff's testimony at his deposition that he (1) did not contact USW International, or (2) request that USW International file a grievance on his behalf, at any time after he received Motiva's February 6, 2014 letter notifying him that his two-year extended disability leave was set to expire on April 30, 2016 and that his employment relationship would be terminated if he was not medically cleared to return to work by that date.[40] As a result, USW International argues the only possible basis for its alleged liability is that it is vicariously liable for the acts of the Local Union.

Section 301(b) of the Labor Management and Relations Act states that "[a]ny labor organization which represents employees in an industry affecting commerce . . . shall be bound by the acts of its agents."[41] Section 301(e) explains that "[f]or the purposes of this section, in determining whether any person is acting as an 'agent' for another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling."[42]

"The general rule is that acts of a local union and its agents may not be imputed to an international union and mere affiliation does not establish vicarious parent body liability."[43] "That the international union signed a collective bargaining agreement will not

---

[39] Plaintiff, in his Fourth Amended Complaint, also states, "Defendant, Local Union 750 is the agent for USW." R. Doc. 260 at ¶ 4.
[40] R. Doc. 280-1 at 4 (citing R. Doc. 277-5 at 325). The Court notes, however, that counsel for the Local Union and USW International did not include the cited page in the excerpts of the Plaintiff's deposition provided to the Court. The Court however, requested and thoroughly reviewed a complete copy of the deposition which has been attached to this Order as Exhibits 1 and 2. The excerpt of the deposition referenced in USW International's motion can be found in Exhibit 2 at 50.
[41] 29 U.S.C. § 185(b).
[42] 29 U.S.C. § 185(e).
[43] *Gerhardt v. Air Transp. Local 557*, 2011 WL 666500, at *8 (S.D. Tex. Feb. 14, 2011) (citing *Carbon Fuel Co.*, 444 U.S. 212; *Shimman v. Frank*, 625 F.2d 80 (6th Cir. 1980)).

alone make it vicariously liable for the acts of a local union; there must be evidence that the international union represented the local employees in the grievance procedure to impose liability on the international union."[44]

"Congress 'adopted a common-law agency test' to govern the liability of an international for the acts of its affiliated locals."[45] As a result, courts addressing the issue of whether an international union is liable for the actions of one of its local affiliates have held that an international union is vicariously liable only if "the local engages in illegal conduct in furtherance of its role as an agent of the international."[46] "However, if the local exercises considerable autonomy in conducting its affairs, it cannot be regarded as an agent of the international, and the international accordingly cannot be held liable under an agency theory for the local's actions."[47] The Ninth Circuit has explained, "[W]hat should matter is not so much the International's theoretical control over the local as the nature and extent of actual control."[48] To analyze the *actual* relationship between the local and international, courts have considered the following "determinative factors": the local's (1) election of its own officers; (2) ability to hire and fire its own employees; (3) maintenance of its own treasure; and (4) independent conduct of its daily business.[49]

USW International concedes it is a signatory to the collective bargaining agreement with the Local Union and Motiva,[50] but points to the absence of evidence in the record to

---

[44] *Id.* (citing *Hammons v. Adams*, 783 F.2d 597, 604-05 (5th Cir. 1986); *Pipes v. United Parcel Service, Inc.*, 2009 WL 1684689, at *5 (W.D. La. June 16, 2009)).
[45] R. Doc. 280-1 at 6 (citing *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 217 (1979)).
[46] *See, e.g. Laughon v. Int'l All. Of Theatrical Stage Employees, Moving Picture Technicians, Artists & Allied Crafts of the United States & Canada*, 248 F.3d 931, 935 (9th Cir. 2001) (citing *Carbon Fuel Co.*, 444 U.S. at 217).
[47] *Id.* (citing *Shimman v. Frank*, 625 F.2d 80, 97-98 (6th Cir. 1980)).
[48] *Id.* (citing *Shimman*, 625 F.2d at 98 n.36; *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1430-31 (D.C.Cir. 1988)).
[49] *Id.* (citing *Childs v. Local 18, Int'l Bhd. Of Elec. Workers*, 719 F.2d 1379, 1382 n.2 (9th Cir. 1983)).
[50] R. Doc. 280-1 at 7 (citing R. Doc. 277-2).

establish the Local Union acted as USW International's agent. As USW International points out, Plaintiff, at his deposition, testified that "he had never contacted the International Union in Pittsburgh,"[51] and "admitted that he did not speak to anyone at the international . . . [and] that he has no information that International even knew what was happening to [him] in the workplace."[52]

Plaintiff responds that he complained about the hostile work environment, harassment and racial discrimination to Armond Thomatis, former Local Union President.[53] Plaintiff also points out that Wilton Ledet, who is now identified as McNealy's Union Representative, was not present, and therefore refused to represent him, when Plaintiff met with Brandon Dufrene and David Naquin to complain about the hostile work environment.[54] Plaintiff references interactions with representatives of the Local Union and not representatives of USW International.

Plaintiff has not put forward any evidence showing that USW International controlled the Local Union's elections, controlled the Local Union's ability to hire and fire its own employees, maintained the Local Union's treasury, or otherwise controlled or directed any other part of the Local Union's daily business. The undisputed facts demonstrate that the Local Union did not act as an agent for USW International. As a result, USW International is not vicariously liable for the acts of the Local Union.[55]

USW International's motion for summary judgment dismissing Plaintiff's claims against it under the Labor Management Relations Act is granted.

---

[51] *Id.* at 4.
[52] *Id.* (citing R. Doc. 277-5 at 325-26). The excerpt of the deposition referenced can be found in Exhibit 2 at 51-52.
[53] R. Doc. 311-3 at ¶ 32-33 (citing R. Doc. 311-4).
[54] *Id.* at ¶ 48.
[55] Alternatively, because the Local Union itself is not liable to the Plaintiff under Section 301, the International Union can have no vicarious liability for its acts. *See infra* p. 11-16.

b. 42 U.S.C. § 1985(3) and § 1986

In his Fourth Amended Complaint, Plaintiff asserts a claim against USW International, under Title 42, United States Code, Sections 1985(3) and 1986, based on USW International's vicarious liability for the acts of the Local Union.[56] Because the Local Union has no liability to the Plaintiff under Sections 1985(3) and 1986,[57] USW International can have no vicarious liability for its acts. USW International's motion for summary judgment is granted with respect to Plaintiff's claims against it under Title 42, United States Code, Sections 1985(3) and 1986.

II. Claims against the Local Union

a. Section 301 of the Labor Management Relations Act

In his Fourth Amended Complaint, McNealy alleges the Local Union breached its duty and violated Section 301 of the Labor Management Relations Act when it failed to enforce and protect his rights and interests provided by the collective bargaining agreement.[58] McNealy's complaint is that the Local Union failed to file grievances protesting work assignments made to him by his employer, failed to protect him from harassment by his co-workers, and failed to represent him when he was medically separated from Motiva.[59] The Local Union argues summary judgment should be granted with respect to Plaintiff's Section 301 claim because the undisputed facts show that (1) all of the claims made by McNealy, save one, his claim that the Union failed to represent him when he was medically separated the company in April 2014, are time-barred by the

---

[56] *See* R. Doc. 260 at ¶ 74.
[57] *See infra* p. 16-18.
[58] R. Doc. 260 at 15.
[59] *See, id.*

applicable statute of limitations; and (2) with respect to Plaintiff's only claim falling within the limitations period, the Local Union did not fail to represent Plaintiff because Plaintiff failed to exhaust his contractual remedies under the collective bargaining agreement.[60]

### 1. Plaintiff's 2011 Claims Have Prescribed

As the Fifth Circuit explained in *Jackson v. Metropolitan Transit Authority*, "In *DelCostello,* the Supreme Court held that the six-month[] statute of limitations in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies to 'hybrid' claims."[61] "The limitations period . . . begins to run when the claimant [] discover[s], in the exercise of reasonable diligence, [or] should discover, the acts that form the basis of [his] duty of fair representation claim."[62]

Prescription is an affirmative defense and defendants bear the burden of proving prescription on a motion for summary judgment by demonstrating the absence of a genuine issue of material fact.[63] A defendant may demonstrate the absence of a genuine issue of material fact by showing that it is facially apparent from the plaintiff's complaint that the claim at issue has prescribed.[64] The Local Union, in its Motion for Summary Judgment, argues it is facially apparent from the Fourth Amended Complaint that "McNealy's claims concerning the alleged 2011 incidents are time-barred."[65]

Plaintiff alleges that in October and/or November of 2011 the Local Union breached its duty when it did not file a grievance on his behalf or provide any other assistance in

---

[60] *Id.*
[61] *Jackson v. Metro. Transit Auth.*, 53 F.3d 1280, at *3 (5th Cir. 1995) (citing *DelCostello v. International Bhd. Of Teamsters*, 462 U.S. 151, 169-72 (1983)).
[62] *Id.* (some alterations in original) (quoting *Wood v. Houston Belt & Terminal Rwy.*, 958 F.2d 95, 97 (5th Cir. 1992)).
[63] *See Bourdais v. City of New Orleans*, 2002 1963320, at *3 (E.D. La. Aug. 22, 2002) (citing *Castano v. American Tobacco Company*, 961 F. Supp. 953, 957 (E.D. La. 1997); *Ducre v. Mine Safety Appliances*, 963 F.2d 757 (5th Cir. 1992)).
[64] *See Chaverri v. Dole Food Co., Inc.*, 546 F. App'x 409, at 411 (5th Cir. 2013).
[65] R. Doc. 277-1 at 18.

response to his being (1) hit on the head with a crane control box, (2) unwillingly confined within a company truck, and (3) assaulted with a radio antenna.[66] McNealy first filed suit on September 22, 2014.[67] March 22, 2014 was six months before this date. The allegations against the Local Union based on the alleged October and November 2011 incidents relate to events that occurred well before March 22 2014, and, clearly fall outside of the six-month limitations period.[68]

On February 29, 2012, Plaintiff returned to work after he exhausted his FMLA leave.[69] Upon his return, McNealy met with Mary Snyder, Steve France and Tim Casey.[70] Also in attendance was Union Representative Wilson Ledet.[71] According to Plaintiff, Ledet told him that this was not the time to bring up his complaints regarding discrimination and the hostile work environment.[72] Following the meeting, Plaintiff was placed on non-occupational disability leave.[73] At this time, Plaintiff was, or should have been, aware that no grievance had been filed on his behalf and that no other assistance was going to be provided. In his deposition, Plaintiff testified it was at this point he first spoke to an attorney about filing a lawsuit.[74] At the latest, McNealy discovered, or should have discovered, the basis of his duty of fair representation claim on February 29, 2012.[75] This too occurred well before March 22, 2014.

---

[66] R. Doc. 277-1 at 7. *See also*, R. Doc. 260 at 3-4.
[67] R. Doc. 1.
[68] R. Doc. 260 at 3-4.
[69] R. Doc. 311-2 at 19 ¶ 49 (citing to R. Doc. 277-5 at 31).
[70] *Id.*
[71] *Id.* (citing R. Doc. 311-21 at 2).
[72] *Id.* at 20 (citing R. Doc. 311-18 at 2)).
[73] R. Doc. 260 at 5.
[74] *See* Ex. 1 at 217 ("It was after that incident on February 29th, when I knew I hadn't a leg to stand on . . . [a]nd I called practically every attorney I could find in the phone book.")
[75] R. Doc. 260 at 5.

Because of the six month statute of limitations period, McNealy's claims based on the 2011 and 2012 incidents survive only if he can show that he is entitled to equitable tolling. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently and (b) that some extraordinary circumstances stood in his way."[76] McNealy contends that he suffered and continues to suffer from mental anguish resulting in post-traumatic stress disorder. In addition to alleging permanent mental disability in his complaint, Plaintiff attaches a copy of the final order from his workers' compensation case on which the Office of Workers' Compensation judge handwrote a note stating, "It is further ordered that Mr. McNealy is deemed permanently and totally disabled."[77] "To equitably toll a claim on the basis of psychological impairment, . . . a party must show that the problems were so severe that they 'rendered him unable to pursue his legal rights during the relevant time period.'"[78] The Local Union argues there is no evidence in the record to establish that Plaintiff's mental problems were so severe they rendered him unable to pursue his legal rights. McNealy, in his deposition, testified that he owns his own house and lives alone, drives himself, does his own banking, picks up his own prescriptions, pays his own bills, and he has never had to transfer Power of Attorney to anyone for operation of his business affairs.[79] McNealy offers no summary judgment evidence to create an issue of disputed fact with respect to whether some extraordinary circumstance stood in his way. It is clear that McNealy not only has the ability to pursue his legal rights but in fact has done so. As a

---

[76] *Pace v. Giguglielmo*, 544 U.S. 408, 418 (2005).
[77] R. Doc. 311-6 at 1.
[78] R. Doc. 277-1 at 21-22 (quoting *Boos v. Runyon*, 201 F.3d 178, 175 (2d Cir. 2000).
[79] R. Doc. 277-5, at 21-22, 20, 32-33, 37.

result the Court finds McNealy's psychological impairments do not entitle him to equitable tolling.[80]

The Local Union's motion for summary judgment dismissing Plaintiff's Section 301 claims for incidents occurring in 2011 and 2012 is granted.

2. <u>Plaintiff Failed to Exhaust His Contractual Remedies Regarding His 2014 Medical Separation From the Company</u>

Plaintiff's sole remaining claim under Section 301 of the LMRA pertains to the Local Union's failure to file a grievance on his behalf regarding the termination of his employment relationship with Motiva in 2014.[81] McNealy argues the Local Union breached its duty of fair representation when it failed "to adhere and enforce and protect his rights and interest under the collective bargaining agreement" when Motiva terminated his employment relationship in 2014.[82]

It is uncontested that on February 6, 2014, McNealy received a letter from Motiva notifying him that his two-year extended disability leave was set to expire on April 30, 2014.[83] It is also uncontested this letter informed McNealy that he would be terminated if he was not medically cleared to return to work by April 30, 2014.[84] It is also uncontested that "[w]hen McNealy received the separation notice, McNealy never contacted anyone

---

[80] The Local Union mentions that "McNealy appears to make an attempt at a futility argument in an effort to toll the deadlines." R. Doc. 277-1 at 22. As already explained above, McNealy fails to address the Local Union's arguments regarding the statute of limitations. In *Rabalais v. Dresser*, the Fifth Circuit recognized an exception to the typical requirement that a Plaintiff exhaust the remedies set forth in a collective bargaining agreement when "exhaustion of contractual remedies would be futile because the aggrieved employee would have to submit his claim to a group 'which is in large part chosen by the (employer and union) against whom (his) real complaint is made." 566 F.2d 518, 519 (5th Cir. 1978) (quoting *Glover v. St. Louis-S.F. Ry. Co.*, 393 U.S. 324, 330 (1969)). The futility exception, however, is not a grounds for tolling of a prescriptive period but instead is an exception to the requirement that a plaintiff must exhaust his contractual remedies prior to initiating a suit.
[81] The Local Union "alleged failure to file a grievance regarding McNealy's medical separation is the only claim against the Local Union made by McNealy which relates to the Local Union's representation of him which falls within the limitations period." R. Doc. 277-1 at 27.
[82] R. Doc. 260 at ¶ 114.
[83] R. Doc. 277-17 at ¶ 60; R. Doc. 311-2 at ¶ 59; R. Doc. 277-15.
[84] R. Doc. 277-17 at ¶ 60; R. Doc. 311-2 at ¶ 59; R. Doc. 277-15.

from the Local Union. McNealy never contacted Poche, Thomatis, or Ledet about his separation."[85] The Local Union offers the sworn declarations of Marty Poche, Armond Thomatis, and Wilson Ledet, in which each declarant states that he first learned of McNealy's medical separation from the company when he received a copy of McNealy's lawsuit against the Local Union.[86]

Plaintiff argues only that the Local Union had knowledge of his termination on or around December 19, 2013. According to Plaintiff, "The Union had full knowledge of McNealy's condition when he was fired through Hippa [sic] Release Forms."[87]

It is uncontested McNealy never contacted anyone from the Local Union when he received the separation notice on February 6, 2014.[88] As a result, it is clear McNealy did not request that the Local Union file a grievance regarding his medical separation. The Fifth Circuit has held that "[i]f the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted the procedure."[89] The section of the collective bargaining agreement between McNealy's employer, Motiva, and the Local Union provides a grievance and arbitration procedure that is the exclusive and final remedy for "[a]ll complaints arising out of the application or interpretation of" the agreement.[90] The Local Union argues "McNealy fails to state how the inaction taken by

---

[85] R. Doc. 277-17 at ¶ 61; R. Doc. 311-2 at ¶ 60. Plaintiff states he admits this fact, however, he also cites to evidence in the record which could be interpreted to mean that the Plaintiff actually denies this fact. *See* R. Doc. 311-2 at ¶ 60 ("McNealy was denied representation in 2011") (citing R. Doc. 311-21 at 302, 319)). The evidence cited to, however, does not support a denial of this fact.
[86] R. Docs. 277-7 at ¶ 34, 277-10 at ¶ 19, 277-11 at ¶ 25.
[87] R. Doc. 311-2 at ¶ 63 (citing R. Doc. 311-20 at 1).
[88] R. Doc. 277-17 at ¶ 61; R. Doc. 311-2 at ¶ 60.
[89] *Id.* (alteration in original) (quoting *Daigle v. Gulf State Utils. Co., Local Union Number 2286*, 794 F.2d 974, 977 (5th Cir. 1986)).
[90] R. Doc. 277-2 at 22 ("All complaints arising out of the application or interpretation of this Agreement shall be handled as filed; it being agreed that unless a complaint is submitted within the time and in the

the Union constitutes a breach of duty of fair representation when it did not even know McNealy was separated from [the] Company," and, as a result, "[a]ny claim by McNealy against the Local Union for alleged breach of the duty of fair representation relating to the April 2014 medical separation is barred by McNealy's failure to invoke the contractual grievance procedure."[91] Plaintiff does not address this argument in his opposition. The Court finds that Plaintiff failed to exhaust his remedies under the governing collective bargaining agreement.

The Fifth Circuit has recognized the following three exceptions to the exhaustion requirement: (1) the union wrongfully refuses to process the employee's grievance, thus violating its duty of fair representation; (2) the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract; and (3) exhaustion of contractual remedies would be futile because the aggrieved employee would have to submit his claim to a group which is in large part chosen by the employer and union against whom his real complaint is made.[92] McNealy claims the futility exception applies in this case. The Fifth Circuit has held, however, that the availability of a neutral arbitrator refutes a futility argument as a matter of law.[93] Section 10.02 of the Collective Bargaining Agreement clearly provides an arbitration option in the circumstance that the union member's complaint is not resolved on an acceptable basis by other means.[94] The futility exception to the exhaustion of contractual remedies requirement does not apply.

---

manner provided by the following procedure, it shall have no status as a valid complaint under any of the provisions of this agreement.").
[91] R. Doc. 277-1 at 28.
[92] *See Rabalais*, 566 F.2d at 519 (citations omitted).
[93] *Parham v. Carrier Corp.*, 9 F.3d 383 (5th Cir. 1993).
[94] R. Doc. 277-2 at 23.

The Local Union's motion for summary judgment dismissing Plaintiff's Section 301 claims related to the termination of his employment relationship in 2014 is granted.

   b. 42 U.S.C. § 1985(3) and § 1986

In his Fourth Amended Complaint, Plaintiff alleges the Local Union:

> Conspired by force, intimidation, and threats to deprive McNealy of his right to redress his job-related grievances, to be protected from harm and valance [sic] in the work place, to be protected from harassment in the work place, to protect McNealy from the hostile work environment, to discriminate against McNealy based on his race, and to terminate McNealy from his employment.[95]

McNealy further alleges "The Union and employers conspired to cover up the crimes and discrimination perpetrated against" him.[96]

In order to state a claim for a conspiracy under § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person property, or a deprivation of any right or privilege of a citizen of the United States; and (5) that the conspiracy was motivated by some class-based animus.[97] Race is a class for the purpose of § 1985(3).[98]

In this case, the alleged unlawful objective of the conspiracy was to discriminate against Plaintiff on the basis of his race. The Local Union points out that there is no evidence in the record to show that its alleged actions were motived by race.[99] In response

---

[95] R. Doc. 260 at ¶ 72.
[96] *Id.* at ¶ 73.
[97] *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994) (citations omitted); *Mayfiled v. Desoto Par. Police Jury*, 2017 WL 519684, at *2 (W.D. La. Feb. 6, 2017). *See also, St. Martin v. Jones*, 2008 WL 4412267, at 7 (E.D. La. Sept. 17, 2008).
[98] *See Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001).
[99] R. Doc. 277-1 at 30 n.26.

17

to the Local Union's motion for summary judgment, Plaintiff fails to identify any evidence creating a genuine issue of fact with respect to whether the Local Union's actions were motivated by race. The Local Union's motion for summary judgment dismissing Plaintiff's Section 1985(3) claim is granted.

Plaintiff has also alleged a claim under 42 U.S.C. § 1986. Because Plaintiff has failed to allege a proper Section 1985 claim, his Section 1986 must be dismissed as well.[100] Accordingly, the Local Union's motion for summary judgment dismissing Plaintiff's Section 1986 claim is granted.

III. Plaintiff's Allegations of Discovery Violations

In his Opposition to the Union Defendants' Motions for Summary Judgment, Plaintiff argues he cannot "fully present his opposition without the discoverable information relative to the contracts and concealed discovery."[101] McNealy argues that the Local Union and USW International failed to properly answer, refused to produce discoverable information, and gave incomplete or evasive responses to interrogatories.[102] Both defendants deny these allegations and argue that they timely produced answers to Plaintiff's discovery requests and that, after Plaintiff's counsel informed their counsel she considered the responses to the discovery requests to be insufficient, the parties had a "10.1 conference and agreed to clarify and supplement some of its answers."[103] Both defendants represent that their counsel provided supplemental discovery to McNealy on January 6, 2017.[104] Further, the Defendants argue, "McNealy could have filed a motion to

---

[100] *See Newberry v. East Texas State Univ.*, 161 F.3d 276, 281 n.3 (5th Cir. 1998) ("If the § 1985 claim fails, so must the § 1986 claim." *See also, Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000) ("And because a valid § 1985 claim is a prerequisite to a § 1986 claim, that claim is also invalid.").
[101] R. Doc. 311-1 at 13.
[102] *Id.*
[103] R. Doc. 334 at 10-11.
[104] *Id.* at 11

18

compel if he still considered the Local Union and USW International's discovery answers insufficient. McNealy had ample time to rectify any perceived issue with the . . . discovery responses. McNealy cannot now use discovery as an excuse for an incomplete opposition and/or insufficient evidence."[105] The Court agrees. Plaintiff's complaints about alleged discovery violations should not be addressed in an opposition to a motion for summary judgment. If true, the complaints should have been raised in a timely Federal Rule of Civil Procedure 37 motion to compel. The Plaintiff did not request additional time for discovery under Federal Rule of Civil Procedure 56(d).

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that the Local Union's[106] and USW International's[107] motions for summary judgment are **GRANTED** and all claims against the Local Union and USW International are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Local Union's [108] and USW International's[109] requests for attorney's fees is **DENIED**.

**New Orleans, Louisiana, this 26th day of May, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[105] *Id.*
[106] R. Doc. 277.
[107] R. Doc. 280.
[108] R. Doc. 277-1 at 32.
[109] R. Doc. 280-1 at 8.