## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NEWTON MCNEALY,** | **CIVIL ACTION** |
| **Plaintiff** | |
| **VERSUS** | **NO. 14-2181** |
| **DARRYL J. BECNEL, ET AL.,** | **SECTION: "E" (2)** |
| **Defendants** | |

## ORDER AND REASONS

Before the Court are Motions for Summary Judgment filed by Defendants Motiva Enterprises, LLC ("Motiva"),[1] Shell Oil Company,[2] and Shell Chemical L.P.[3] seeking the dismissal of Plaintiff's claims with prejudice. Plaintiff Newton McNealy opposes these motions.[4] For the following reasons, the Defendants' motions for summary judgment are **GRANTED IN PART**. The motions are **DENIED IN PART** to the extent movants seek dismissal of Plaintiff's state law claims with prejudice.

## FACTUAL & PROCEDURAL BACKGROUND

McNealy originally filed this civil action on September 22, 2014, and has been granted leave of court on multiple occasions to amend his complaint.[5] On December 22, 2015, Shell Oil Company, along with Motiva Enterprises LLC ("Motiva") and Shell Chemical LP, filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[6] On October 17, 2016, the Court issued its Order regarding the then pending dispositive motions that had been filed by the Defendants in this case.[7] In its

---

[1] R. Doc. 275.
[2] R. Doc. 278.
[3] R. Doc. 279.
[4] R. Docs. 309, 310, 312.
[5] McNealy's complaints include Record Document 1 (Complaint), Record Document 37 (Amended and Supplemental Complaint), Record Document 60 (Second-Amended Complaint), Record Document 114 (Third-Amended Complaint), and Record Document 260 (Fourth-Amended Complaint).
[6] R. Doc. 121.
[7] R. Doc. 237.

Order, the Court dismissed Plaintiff's Title VII, ADA and ERISA claims and converted Motiva, Shell Oil Company, and Shell Chemical LP's 12(b)(6) motion to dismiss with respect to Plaintiff's Section 1981, 1985(2) and (3), 1986, and 141 claims into motions for summary judgment.[8] The Court deferred on ruling on whether to exercise supplemental subject matter jurisdiction on McNealy's state law claims until after the Court ruled on the Defendants' motions for summary judgment.[9] On February 7, 2017, pursuant to the Court's Order,[10] Shell Oil Company and Shell Chemical LP ("Shell Defendants") filed their respective motions for summary judgment.[11] On that same day, Motiva filed its motion for summary judgment.[12]

Plaintiff is an African-American male who was originally hired by Shell Chemical LP in 2006 to work as a machinist at a chemical plant in Norco, Louisiana. The chemical plant shares the same industrial site as Motiva Enterprises LLC's Norco refinery. In July 2008, McNealy voluntarily and successfully bid to transfer his employment to Motiva as a machinist at the refinery. McNealy volunteered for a "turnaround" shift in October and November 2011. Three incidents allegedly occurred during this turnaround shift. McNealy alleges, on or about November 7, 2011, while in the course and scope of his employment with Motiva, he was "victimized" and "struck in the head" by a crane control box at the hands of his white co-workers. After the attack, McNealy alleges he retreated to a company truck to recover whereupon his co-workers "wrapped and sealed" him in the vehicle and covered the windows with shaving cream. McNealy also alleges, in the

---

[8] *See id.*
[9] *Id.* at 38.
[10] R. Doc. 267.
[11] R. Docs. 278, 279.
[12] R. Doc. 275.

days that followed, he was verbally assaulted, threatened, sodomized,[13] and sexually harassed by his white co-workers, which contributed to a hostile work environment. McNealy thus alleges the various Defendants condoned "inappropriate behavior in the workplace," and ultimately violated the Collective Bargaining Agreement between Motiva and the Plaintiff's union.

Plaintiff also alleges that during his employment at the Norco Refinery similarly situated white employees were appointed or promoted to upper echelon job positions without his being allowed to compete for the positions.

In his Fourth Amended Complaint, McNealy alleges, as a result of this treatment, he developed and has been diagnosed with post-traumatic stress disorder, anxiety, paranoia, and depression, among other conditions. As a result of his allegedly raising complaints about the incidents and the hostile work environment created thereby, McNealy alleges the Defendants retaliated against him. McNealy alleges he was placed on non-occupational disability in February of 2012 and remained on disability for over two years. According to McNealy, after having been on disability for an extended period of time, he was converted to "non-pay status," and after two years, his employment relationship with Motiva was terminated.

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] "An issue is material if its resolution could affect the outcome of the action."[15]

---

[13] Although Plaintiff alleges he was sodomized, Plaintiff testified at his deposition that he was dressed in a jumpsuit and underwear at the time of the incident and there was no contact with his skin and no penetration. R. Doc. 275-3 at 33 ln. 9-19; R. Doc. 310-3 at 10 ¶ 15.
[14] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[15] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[16] All reasonable inferences are drawn in favor of the nonmoving party.[17] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[18]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[19] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[20]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[21] When proceeding under the first option, if the

---

[16] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[17] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[18] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[19] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[20] *Celotex*, 477 U.S. at 322–24.

[21] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential

4

nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[22] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[23] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[24] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[25] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[26]

---

element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[22] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

[23] *Celotex*, 477 U.S. at 332–33.

[24] *Id.*

[25] *Celotex*, 477 U.S. at 332–33, 333 n.3.

[26] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[27]

## LAW AND ANALYSIS

### I. Plaintiff's Racial Discrimination Claims Under Section 1981

McNealy alleges race discrimination claims against Motiva under 42 U.S.C. § 1981 and the Louisiana Employment Discrimination Law ("LEDL")[28] for unlawful termination, retaliation, failure-to-promote, and hostile work environment.[29]

#### a. Termination of Employment

McNealy alleges Motiva unlawfully discriminated against him on account of his race when it terminated his employment on April 30, 2014.

It is undisputed that on November 10, 2011, McNealy met with Brandon Dufrene (Routine Maintenance Execution Supervisor), David Naquin (Central Shop Mechanical Quality Assurance/Quality Control), and Wilton Ledet (a representative of the United Steelworks Union, Local 750 (the "Local Union")).[30] It is undisputed that the purpose of this meeting was to discuss McNealy's recent job-performance issues.[31] Motiva provides

---

[27] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[28] As discussed in greater detail below, the Court declines to address the merits of Plaintiff's state law claims. *See infra* p. 28.

[29] *See* R. Doc. 260.

[30] R. Doc. 275-2 at ¶ 17; R. Doc. 310-3 at ¶ 17.

[31] R. Doc. 275-2 at ¶ 18. In its Statement of Uncontested Facts, Motiva alleges "The purpose of the meeting was to discuss McNealy's recent job-performance issues. *Id.* Plaintiff denies this fact and instead states, "The purpose of this meeting was to discuss *alleged* recent job performance issues." R. Doc. 310-3 at ¶ 18 (emphasis added).

the sworn declarations of Mary Snyder and Brandon Dufrene in which they testify that the November 10, 2011 meeting was the first time that McNealy mentioned the crane box, truck and "goosing" incidents to Motiva.[32] McNealy disputes that this was the first knowledge Motiva had of these incidents because Motiva employees were involved and Motiva had knowledge through them.[33] It does not appear, however, that McNealy contests that this was the first time *he* mentioned these three incidents to Motiva's management.[34] It is uncontested that, following the meeting, Dufrene and Naquin immediately reported McNealy's claims to Mary Snyder in Motiva's human resources department.[35] According to Motiva, Snyder then requested another meeting with McNealy to gather additional details about his claims and this meeting took place on November 14, 2011.[36] Plaintiff denies the meeting took place at all.[37] It is undisputed that after this date, Plaintiff took three months of FMLA leave and did not return to work until February 29, 2012.[38] It is also undisputed that on February 29, 2012, Plaintiff returned from his FMLA leave.[39] It is undisputed that upon his return, a meeting was held between Plaintiff, Snyder, Dufrene, Ledet, and Tim Casey[40] to discuss reports that McNealy had

---

[32] R. Doc. 275-2 at ¶ 20; *See* R. Doc. 310-3 at ¶ 20; R. Doc. 275-5 at ¶ 19 (Snyder's Sworn Declaration); R. Doc. 275-6 at ¶ 9 (Dufrene's Sworn Declaration).

[33] R. Doc. 310-3 at ¶ 20.

[34] *See id.*

[35] R. Doc. 275-2 at ¶ 22; R. Doc. 310-3 at ¶ 22; R. Doc. 275-5 at ¶ 19.

[36] R. Doc. 275-2 at ¶ 23.

[37] R. Doc. 310-3 at ¶ 23 (referencing Deposition of McNealy). In his deposition, Plaintiff states this meeting never occurred. *See* R. Doc. 341-2 at 316. Although Plaintiff denies this meeting occurred, Exhibit 1 accompanying his Opposition to Motiva's Motion for Summary Judgment contains notes from an interview with Plaintiff occurring on November 14, 2011. R. Doc. 310-4.

[38] R. Doc. 275-2 at ¶ 27; R. Doc. 310-3 at ¶ 27. In his Deposition, Plaintiff mentions that he took three months FMLA leave. *See* R. Doc. 341-1 at 130. Additionally, Exhibit 1 to Plaintiff's Opposition discusses Plaintiff's three month non-occupational disability leave from November 10, 2011 through February 28, 2012. R. Doc. 310-4 at 5.

[39] R. Doc. 275-2 at ¶ 30; R. Doc. 310-3 at ¶ 30. Although Plaintiff states that he denies Motiva's uncontested material fact, it is clear from his response that he does not deny that Plaintiff returned from FMLA leave on February 29, 2012. *Id.*

[40] Tim Casey is identified as the Supervisor-Reliability for Instrument Maintenance. R. Doc. 275-5 at ¶ 29.

been sleeping on the job and that one of his time cards was falsified.[41] Motiva offers evidence that following this meeting, McNealy finished his shift before returning home.[42] In his opposition, Plaintiff denies this occurred and asserts that he did not finish his shift and instead left immediately after the meeting concluded.[43] During his deposition, however, McNealy affirmatively answered that he finished his shift before returning home on February 29, 2012.[44] The parties agree that McNealy did not return to work after that day and was subsequently placed on non-occupational disability leave.[45] It also is uncontested that on February 6, 2014, Motiva informed McNealy via certified mail that, if he did not return to work by April 30, 2014, the day his disability leave was set to expire, his employment would be terminated per Motiva policy.[46] It also is uncontested that McNealy did not return to work by April 30, 2014.[47] As a result, the parties agree that, after more than two years on non-occupational disability leave, McNealy's employment relationship with Motiva was terminated on April 30, 2014.[48]

Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts…"[49] Section 1981(b) defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."[50] The

---

[41] R. Doc. 275-2 at ¶ 30; R. Doc. 275-5 at ¶ 29.
[42] R. Doc. 275-2 at ¶ 30.
[43] R. Doc. 310-3 at ¶ 30.
[44] R. Doc. 341-1 at 141 (Plaintiff's Deposition). In any event, this factual dispute is not material.
[45] R. Doc. 275-2 ¶¶ 31, 34; R. Doc. 310-3 ¶¶ 31, 34.
[46] R. Doc. 275-2 at ¶ 32; R. Doc. 310-3 at ¶ 32; R. Doc. 275-8.
[47] R. Doc. 275-2 at ¶ 33; R. Doc. 310-3 at ¶ 33; R. Doc. 275-9.
[48] R. Doc. 275-2 at ¶ 35; R. Doc. 275-9. The Plaintiff admits the employment relationship was terminated on April 30, 2014 but argues that his termination was not proper. R. Doc. 310-3 at ¶¶ 35, 37.
[49] 42 U.S.C. § 1981(a).
[50] *Id.* § 1981(b).

standard of proof for Section 1981 claims is the same as for Title VII claims. Section 1981 claims are analyzed under the Title VII evidentiary framework.[51]

Liability on a claim that an employer intentionally discharged an employee because of race or national origin – i.e., a "disparate treatment" claim – "depends on whether the protected trait actually motivated the employer's decision."[52] "[A] plaintiff can prove disparate treatment either (1) by direct evidence that a workplace ... decision relied expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas*."[53]

Plaintiff attempts to prove through direct evidence that the termination of his employment relationship with Motiva was based on his race. "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption. In the Title VII context, direct evidence includes any statement or document that shows on its face that an improper criterion served as a basis for the adverse employment action."[54] McNealy's alleged direct evidence of discrimination is (1) the remarks allegedly made to him by David Mendel in 2011 about a racist sign in Mendel's hometown,[55] and (2) the alleged use of racial slurs by Perry Montz in 2011.[56] Neither Mendel nor Montz was involved in McNealy's termination, which occurred over two years later.[57] As a result, this evidence, even if true, is not *direct* evidence of

---

[51] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 & n.7 (5th Cir. 2004); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2002)).

[52] *Young v. United Parcel Service, Inc.*, --- U.S. ---, 135 S.Ct. 1338, 1345 (2015) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)).

[53] *Id.*

[54] *Harry v. Dallas Hous. Auth.*, 662 F. App'x 263, 266 (5th Cir. 2016) (citations omitted).

[55] *See* R. Doc. 310-13 at ¶ 32 (Plaintiff's Affidavit).

[56] R. Doc. 341-1 at 63 (Plaintiff's Deposition).

[57] The February 6, 2014 letter sent to McNealy stating that his employment would be terminated on April 30, 2014 in accordance with company policy was sent by Tammy Troxclair, a human resources associate at Motiva. R. Doc. 275-8 (Termination Letter).

discrimination because an inference is required to link the 2011 remarks to the 2014 termination of McNealy's employment for an improper reason.[58]  The Court finds that McNealy has not adduced direct evidence of discrimination and, as a result, McNealy's claim that he was terminated because of discrimination must be evaluated using the burden-shifting framework of *McDonnell Douglas*.[59]

Under the *McDonnell-Douglas* framework, a plaintiff relying on circumstantial evidence must first establish a *prima facie* case of discrimination.[60] If the plaintiff is successful, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for its employment decision.[61]If the defendant carries this burden, the inference of discrimination disappears,[62] and the burden shifts back to the plaintiff to prove the defendant's articulated reason (a) is mere pretext for discrimination, or (b), if true, is only one of the reasons for its decision, and another "motivating factor" is the plaintiff's protected characteristic.[63]

In order to establish a *prima facie* case of unlawful termination on the basis of race, a plaintiff must demonstrate that (1) he belongs to a protected class, (2) he was qualified for the position, (3) he was discharged from the position, and (4) the employer sought to replace him with a similarly qualified individual outside of the protected group *or* that defendant treated individuals of a different race or gender more favorably than it treated him.[64]

---

[58] *See Harry*, 662 F. App'x at 267.
[59] *See id.*
[60] *Autry v. Fort Bend Ind. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013).
[61] *Turner v. Kan. City. S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012).
[62] *Davis v. Dall. Area Rapid Transit*, 382 F.3d 309, 317 (5th Cir. 2004).
[63] *See Autry*, 704 F.3d at 347.
[64] *See, e.g. Catchings v. St. Tammany Ass'n for Retarded Citizens*, 2002 WL 31427324, at *1 (E.D. La. Oct. 28, 2002) (citations omitted).

The parties do not dispute that the first three elements have been met. Motiva argues McNealy is unable to establish the fourth element and his "*prima facie* case fails because he cannot prove that Motiva sought to replace him with a non-African-American, or that he was actually replaced by one."[65] Motiva correctly notes that McNealy provides no evidence whatsoever with respect to whether he was replaced and, if so, by whom, but a plaintiff also may satisfy the fourth element of his prima facie case by demonstrating the defendant treated individuals of a different race or gender more favorably than the Defendant treated him. But neither did McNealy provide evidence that individuals of a different race or gender were treated more favorably than he was. McNealy has failed to create an issue of disputed fact with respect to whether Motiva, when it terminated his employment relationship pursuant to company policy after two years of non-occupational disability leave, treated him any differently or less favorably than others because of his race. Because the Plaintiff has failed to prove the fourth element of his *prima facie* case by a preponderance of the evidence, the burden does not shift to the Defendant to offer a legitimate, non-discriminatory reason for Plaintiff's termination, and the Court need not engage any further in the *McDonnell-Douglas* burden-shifting analysis.

Nevertheless, assuming *arguendo* that McNealy established a *prima facie* case, the Court finds that Motiva has offered a legitimate, non-discriminatory reason for his termination – McNealy was terminated in accordance with company policy that employment is terminated after a two-year non-occupational disability leave if the employee does not return to work. It is undisputed that on February 6, 2014, Motiva informed McNealy via certified mail that, if he did not return to work by April 30, 2014,

---

[65] R. Doc. 275-1 at 10.

the day his disability leave was set to expire, his employment would be terminated per Motiva policy.[66] Motiva presents the sworn declaration of Mary Snyder in which she testifies that "from 2012-2014, Motiva terminated seven employees at the Refinery under this very same policy, six of whom were Caucasian."[67]

Because Motiva has articulated a legitimate, non-discriminatory reason for his termination, the burden shifts back to the Plaintiff to prove the defendant's articulated reason (a) is mere pretext for discrimination, or (b), if true, is only one of the reasons for its decision, and another "motivating factor" is the Plaintiff's protected characteristic.[68] Motiva argues "McNealy cannot carry his summary judgment burden under either alternative."[69]

As the Supreme Court explained in *Reeves v. Sanderson Plumbing Products, Inc.*, "Although intermediate evidentiary burdens shift back and forth under the framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."[70] "To carry that burden, the plaintiff must produce substantial evidence of pretext."[71] "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient."[72] The Fifth Circuit "has consistently held that an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief."[73] In response to a motion for summary

---

[66] R. Doc. 275-2 at ¶ 32 (citing R. Doc. 275-3 at 35 ln. 5-10); R. Doc. 310-3 at ¶ 32.
[67] R. Doc. 275-1 at 10 (citing R. Doc. 275-5 at ¶ 32 (Declaration of Mary Snyder)).
[68] *See Autry*, 704 F.3d at 347.
[69] R. Doc. 275-1 at 10.
[70] 530 U.S. 133, 143 (2000) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (internal quotations omitted)).
[71] *See Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001).
[72] *Id.* at 403 (quoting *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999)).
[73] *Id.* (quoting *Bauer*, 169 F.3d at 967) (citation omitted)).

judgment, "it is therefore incumbent upon the non-moving party to present evidence – not just conjecture and speculation – that the defendant retaliated and discriminated against plaintiff on the basis of her race."[74] Plaintiff has not put forth any evidence supporting his claim that Motiva's stated reason for his termination is merely pretext and that, instead, Motiva intentionally discriminated against him on the basis of race when it terminated his employment.[75]

The Court must also consider whether McNealy can show that his race was a motivating factor in his termination, often referred to as the mixed-motive alternative. "The Fifth Circuit has not decided whether the mixed-motives alternative is available to § 1981 plaintiffs."[76] Assuming that McNealy may avail himself of the mixed-motive approach, McNealy still must offer sufficient evidence to create a genuine issue of fact with respect to whether the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination.[77] Although the Supreme Court, in *Desert Palace, Inc. v. Costa*, explained that a plaintiff does not face a heightened evidentiary burden in mixed-motive cases, a plaintiff must still put forth evidence, which may be circumstantial, demonstrating by a preponderance of the evidence that discrimination was a motivating factor in the adverse employment decision.[78] McNealy has not put forth any evidence supporting his claim that the reason for his termination was, at least in part, racial and that Motiva's stated reason for his termination is

---

[74] *Grimes v. Texas Dept. of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996).
[75] The Court requested and thoroughly reviewed a complete copy of McNealy's deposition, which was attached to the Court's May 26, 2017 Order and Reasons regarding the Union Defendants' Motions for Summary Judgment. *See* R. Docs. 341-1, 341-2.
[76] *See, e.g., Almeida v. Solis*, 2015 WL 4638284, at *4 (S.D. Tex. Aug 4, 2015) (collecting cases)).
[77] *See, e.g., Richardson v. Monitronics Intern. Inc.*, 464 F.3d 327, 333 (5th Cir. 2005) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).
[78] *See Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

pretextual. The Court finds that McNealy has failed to satisfy his burden of demonstrating that the actions leading to the termination of his employment were, even in part, racially motivated. As a result, Motiva's motion for summary judgment with respect to Plaintiff's Section 1981 claims regarding the termination of his employment relationship with Motiva is granted.

### b. Retaliation

In his opposition to Motiva's motion for summary judgment on his retaliation claim, McNealy argues only that his being placed on non-occupational disability status was in retaliation for his complaints regarding alleged racial discrimination and hostile work environment.[79]

Section 1981 retaliation claims are analyzed under the *McDonnell-Douglas* framework.[80] As the Fifth Circuit explained in *Davis*:

> To present a prima facie case of retaliation under Title VII or § 1981, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.[81]

"If a plaintiff succeeds in making a prima facie case, the burden then shifts to the defendants to proffer a legitimate rationale for the underlying the [sic] employment action."[82] "If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation."[83]

---

[79] R. Doc. 310-1 at 13.
[80] *Zatrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 533, 564 (5th Cir. 2015).
[81] *Davis*, 383 F.3d at 319 (citing *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Foley v. Univ. of Houston Sys.*, 324 F.3d 310, 216 (5th Cir. 2003)).
[82] *Id.* (citing *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001)).
[83] *Id.* (citing *Aldrup*, 274 F.3d at 286).

Motiva argues McNealy is unable to make a *prima facie* case because he did not engage in a protected activity.[84] Motiva argues that, although "McNealy reported certain workplace incidents during meetings with Motiva management, he *never* complained of discrimination."[85] As a result, Motiva argues that "during his employment with Motiva, McNealy did not oppose any practice made unlawful by Title VII, because that statute only protects claims of discrimination."[86] Motiva further argues that, even if McNealy did complain of discrimination, his belief that he was discriminated against was not reasonable.[87] The Fifth Circuit has required that, in order to satisfy the first prong of the *prima facie* analysis, the plaintiff must demonstrate that he had "at least a 'reasonable belief' that the practices [he] opposed were unlawful."[88] Motiva argues that because McNealy cannot identify any objective evidence of discrimination to support his subjective beliefs, it is clear he did not engage in a protected activity.[89]

An employee has engaged in protected activity if he has (1) opposed any practice made an unlawful employment practice by the statute, or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing.[90]

McNealy does not argue that he made a charge or participated in a Title VII Proceeding. As a result, the Court must determine whether he opposed a practice made an unlawful employment practice by statute. Motiva admits that McNealy mentioned the

---

[84] R. Doc. 275-1 at 12.

[85] R. Doc. 275-1 at 12 (citing R. Doc. 275-5 at ¶ 24 (Declaration of Mary Snyder); R. Doc. 275-6 at ¶ 10 (Declaration of Brandon Dufrene)) (emphasis in original).

[86] *Id.*

[87] *Id.* at 13.

[88] *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

[89] R. Doc. 275-1 at 13.

[90] *Alleman v. Louisiana Dept. of Econ. Dev.*, 698 F. Supp. 2d. 644, 663-64 (M.D. La. 2010) (citing *Grimes*, 102 F.3d at 140)).

crane box, truck-wrapping and goosing incidents to Brandon Dufrene and David Naquin on November 10, 2011.[91] Motiva, however, offers the sworn declarations of Brendan Dufrene and Mary Snyder in which they testify that at the November 10, 2011 meeting McNealy (1) did not claim that any of these incidents was racially motivated or (2) make any other complaints of racial discrimination.[92] McNealy argues that before the November 10, 2011 meeting he complained to the former Union President, Armond Thomatis, "about the hostile work environment including but not limited to Perry Montz and George Kestler's harassment and racial discrimination."[93] For support, McNealy cites only to Motiva's summary of investigative findings, an unsworn document, including notes from the interview of Perry Montz.[94] The Montz interview notes state only that Armond Thomatis said McNealy's co-employees needed to quit teasing him;[95] the interview notes provide no evidence that McNealy complained to Thomatis or others about racial discrimination. Neither do the other cited portions of the investigative report provide evidence that McNealy complained of racial discrimination.[96] McNealy did testify at his deposition that he complained about the discrimination during the February 29, 2012 meeting with Snyder, Dufrene, Ledet and Casey, however, McNealy provided no evidence other than his own testimony.[97]

Giving McNealy the benefit of the doubt, and assuming he did engage in a protected activity and is able to meet the two other elements of his *prima facie* case, the burden shifts to Motiva to articulate a legitimate, non-discriminatory reason for the

---

[91] R. Doc. 275-2 at ¶ 19.
[92] R. Docs. 275-6 at 2; 275-5 at 3.
[93] R. Doc. 310-2 at 3.
[94] R. Doc. 310-3 at 11 (citing R. Doc. 310-4 at 2 ln. 1-11).
[95] *Id.* at 1-2.
[96] R. Doc. 310-2 at 6 (citing R. Doc. 310-4 at 3 ln. 31-32, 7 ln. 3-13)
[97] *See* R. Doc. 341-1 at 131.

adverse employment action – his being placed on non-occupational disability leave. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'"[98] "To meet this burden, the employer must show, through admissible evidence, a legally sufficient reason for not hiring the plaintiff."[99] The Fifth Circuit has explained that, although the burden at the second stage of the burden-shifting analysis does not require much, a Defendant must provide "enough detail to enable [a plaintiff] to attempt to show pretext."[100] Motiva has stated that, because McNealy did not return to work after his FMLA leave, he was placed on disability leave.[101] Motiva sent a letter to McNealy on February 6, 2014 informing him that he had been placed on non-occupational disability leave on February 29, 2012 as a result of medical documentation it received from his doctor.[102] The Court finds that Motiva's articulated non-discriminatory reason provides enough detail to enable McNealy to attempt to show pretext.

Because Motiva has articulated a non-discriminatory reason for its decision to place him on non-occupational disability leave, the burden shifts to McNealy to prove that Motiva's stated reason is pretext. As explained above, "To carry that burden, the plaintiff must produce substantial evidence of pretext."[103] "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient."[104] McNealy argues that Motiva has stated only pretextual, bad faith reasons for its decision to classify his injuries

---

[98] *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)). In
[99] *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 202 (5th Cir. 2008) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). The Fifth Circuit has explicitly held that the standard articulated in *Burdine* applies to retaliation cases. *See Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 402 (5th Cir. 2000).
[100] *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004).
[101] R. Doc. 275 at 7 (citing R. Doc. 275-5 at ¶ 30.
[102] R. Doc. 275-8 at 1.
[103] *See Auguster*, 249 F.3d at 402-03.
[104] *Id.* at 403 (quoting *Bauer*, 169 F.3d at 967).

as non-occupational.[105] McNealy cites, without explanation or argument, to his own medical records, his termination notice, and documents related to his social security and workers' compensation claims.[106] None of the evidence referenced by the Plaintiff provides any support for his argument that (1) Motiva's reason was pretextual and that, in reality, Motiva retaliated against him when it placed him on non-occupational disability leave, or (2) that Motiva's articulated non-discriminatory reason was false. Because McNealy provided no evidence to show of pretext, he has failed to satisfy his burden. Motiva's motion for summary judgment dismissing Plaintiff's retaliation claims under Section 1981 is granted.

c. Failure to Promote

Plaintiff alleges a cause of action under Section 1981 for failure to promote. He claims "white employees similarly situated as he were appointed / promoted to [an] upper echelon job position on the night shift without allowing him to compete for the position."[107] McNealy's failure-to-promote claim also is analyzed under the *McDonnell-Douglas* framework.[108] A Plaintiff establishes a *prima facie* case for failure to promote by demonstrating "(1) he belongs to a protected class; (2) he applied and was qualified for the job sought; (3) despite his qualifications, he was rejected; and (4) after his rejection,

---

[105] R. Doc. 310-3 at ¶ 37.

[106] *See id.* (citing R. Docs. 310-5, 310-6, 310-7, 310-9, 310-13.

[107] R. Doc. 260 at ¶ 13.

[108] *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003). *See also, e.g., Walton v. Vilsack*, 2011 WL 3489967, at *5 (E.D. La. Aug. 10, 2011).

the position was filled by someone not in the protected class."[109] Motiva argues "McNealy cannot establish the second, third, and fourth elements of his *prima facie* case."[110]

The second element requires initially that the Plaintiff apply for the position. The Fifth Circuit has explained that "[f]ailure to apply for a disputed promotion will bar a 'failure to promote' claim absent a showing that such an application would have been a futile gesture."[111] The Fifth Circuit has explained that the "futile gesture" exception "requires a showing that the applicant . . . was deterred by a known and consistently enforced policy of discrimination."[112] Motiva points out that, "In his deposition, McNealy identified two job positions that are the subject of this claim: inspector and foreman. It is undisputed that McNealy did not apply for these alleged promotions."[113] In his deposition, McNealy testified that, to his knowledge, none of the other employees who were promoted actually applied for their positions.[114] Instead, McNealy testified that his supervisor "just picked who he wanted."[115] Although McNealy admits he never asked his supervisor, Brandon Dufrene, to be considered for the positions,[116] McNealy also testified,

---

[109] *See, e.g., Walton*, 2011 WL 3489967, at *5 (quoting *Walker v. Geithner*, 400 F. App'x 914, 916 (5th Cir. 2010)). In its Motion for Summary Judgment, Motiva states that the fourth element of a Plaintiff's *prima facie* case is "(4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications." R. Doc. 275-1 at 15 (quoting *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004)). While other courts have used Motiva's formulation of the *prima facie* elements for a failure-to-promote case, Motiva's formulation is more applicable to cases in which the position in question was filled by an individual in the Plaintiff's protected class. *See Monroe v. Corpus Christi Indep. Sch. Dist.*, 2006 WL 2092436, at *7 (S.D. Tex. July 26, 2006) (citing *Nieto v. L & H Packaging Co.*, 108 F.3d 621, 624 n.7 (5th Cir. 2001)). As this is not the case with respect to Plaintiff's failure-to-promote case, the Court finds that Motiva's formulation of the *prima facie* elements is not appropriate for this case.
[110] R. Doc. 275-1 at 15.
[111] *Irons Aircraft Serv. Int'l, Inc.*, 392 F. App'x 305, 312 (5th Cir. 2010).
[112] *McCullough v. Houston Cnty. Texas*, 297 F. App'x 282, 287 (5th Cir. 2008) (alteration in original) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999)).
[113] R. Doc. 275-1 at 15 (citing R. Doc. 275-3 at 44, ln. 7-17) (Excerpts of Plaintiff's Deposition). Motiva also states that it "disputes that these positions constituted 'promotions' but does not raise this issue on summary judgment." *Id.* at 15 n.72.
[114] *See* R. Doc. 275-3 at 45.
[115] *Id.* at 45, ln. 14-15.
[116] *Id.* at 45, ln. 10-13.

"as far as I'm concerned, I didn't know – nobody else did."[117] Motiva provides no evidence contradicting these statements. "The elements of a plaintiff's prima facie case necessarily vary depending on the particular facts of each case, and the nature of the claim."[118] Based on the facts of this case, the Court finds the requirement that a plaintiff apply for a disputed promotion is not applicable because any attempt by McNealy to do so would have been futile. Further, "[o]verall, the burden of establishing a prima facie case is not onerous."[119]

The second part of the second element requires that the Plaintiff demonstrate that he was qualified for the position. McNealy provides no evidence he was qualified for the positions of inspector or foreman. McNealy has not satisfied this portion of the second element. As a result, he cannot satisfy the third element which requires him to show he was rejected *despite his qualifications*. McNealy, however, has ostensibly met the fourth element through the production of his affidavit in which he states that the inspector and foreman positions were assigned to white employees.[120] Although the overall burden of establishing a *prima facie* case is not onerous, McNealy has failed to establish the second and third elements of his *prima facie* case.

Motiva's motion for summary judgment dismissing Plaintiff's failure-to-promote claim is granted as a result of Plaintiff's failure to establish his *prima facie* case.

---

[117] *Id.* at 45, ln. 13-14.
[118] *LeBlanc v. Greater Baton Rouge Port Com'n*, 676 F. Supp. 2d 460, 470 (M.D. La. 2009) (citing *La Pierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973)).
[119] *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 202 (5th Cir. 2008) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).
[120] R. Doc. 310-13 at ¶ 25.

### d. Hostile Work Environment

Although McNealy does not specifically address the bases for his hostile work environment claim, it appears his claim is based on the crane, truck and goosing incidents as well as the alleged use of racially-discriminatory comments in the workplace.[121]

To establish a *prima facie* case of a hostile work environment, the Fifth Circuit has explained a plaintiff must show:

> (1) [He] belongs to a protected group; (2) [he] was subjected to unwelcomed harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[122]

Motiva argues "Summary judgment is appropriate because McNealy cannot establish the third and fifth elements of his claim."[123] The Court will not examine whether McNealy has established the third element of his *prima facie* case because he has failed to establish the fifth element of a *prima facie* hostile work environment claim which requires that a plaintiff show his employer failed to take prompt remedial action.[124] Motiva argues it "immediately initiated an investigation when McNealy first reported the incidents to management on November 10, 2011."[125] It is uncontested that Dufrene and Naquin immediately reported Plaintiff's claims to Mary Snyder in Motiva's human resources department following their November 10, 2011 meeting with McNealy.[126] It is also uncontested that Motiva, over the next two weeks, interviewed Perry Montz, George

---

[121] *See* R. Doc. 260 at 7.

[122] *Mendoza v. Helicpoter*, 548 F. App'x 127, 128-29 (5th Cir. 2013) (alterations in original) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)); *see also Hudson v. Cleco Corp.*, 539 F. App'x 615, 619-20 (5th Cir. 2013).

[123] R. Doc. 275-1 at 17.

[124] R. Doc. 275-1 at 18.

[125] *Id.*

[126] R. Doc. 275-2 at ¶ 22; R. Doc. 310-3 at ¶ 22.

Kestler, Matt Loque, Bill LeBouef, Pat Meche and David Mendel regarding Plaintiff's allegations.[127] It is also uncontested that following its investigation, Motiva reprimanded George Kestler and Matt Loque.[128] The Fifth Circuit has explained, "What constitutes prompt remedial action is a fact-specific inquiry and 'not every response by an employer will be sufficient' to absolve the employer of liability."[129] "An employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not reasonably calculated to halt the harassment."[130] In *Carmon v. Lubrizol*, the Fifth Circuit held that an employer took prompt remedial action as a matter of law after finding that the employer "took the allegations seriously, it conducted prompt and thorough investigations, and it immediately implemented remedial and disciplinary measures based on the results of such investigations."[131] . Motiva has produced the sworn declarations of Mary Snyder, [132] Brandon Dufrene, [133] and disciplinary documents regarding Plaintiff's allegations to document proving that a thorough investigation was undertaken and disciplinary measures were imposed.[134] McNealy has not put forth any evidence creating a genuine issue of material fact as to whether Motiva failed to take prompt remedial action or that Motiva's actions were not reasonably calculated to halt the harassment.

---

[127] R. Doc. 275-2 at ¶ 28; R. Doc. 310-3 at ¶ 28.
[128] R. Doc. 275-2 at ¶ 29; R. Doc. 310-3 at ¶ 29. Although Plaintiff states that he denies this fact, it is clear that Plaintiff denies only Motiva's assertion that Kestler and Loque for *formally* reprimanded. See *id.* Plaintiff states that both Kestler and Loque were only given oral reminders. Motiva has attached, however, copies of letters, signed by Tim Casey, George Kestler and Matt Loque, documenting that they were given oral reminders for their conduct. *See* R. Doc. 275-7.
[129] *Williams-Boldware v. Denton Cty., Tex.*, 741 F.3d 635, 640 (5th Cir. 2014).
[130] *Id.* (citations omitted).
[131] *Id.* (quoting *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 795 (5th Cir. 1994).
[132] R. Doc. 275-5.
[133] R. Doc. 275-6,
[134] R. Doc. 275-7.

Motiva's motion for summary judgment dismissing McNealy's hostile work environment claims is granted.

II.  Race-Based Conspiracy Claims

In his Fourth Amended Complaint, Plaintiff alleges Motiva:

> Conspired by force, intimidation, and threats to deprive McNealy of his right to redress his job-related grievances, to be protected from harm and valance [sic] in the work place, to be protected from harassment in the work place, to protect McNealy from the hostile work environment, to discriminate against McNealy based on his race, and to terminate McNealy from his employment.[135]

In addition, McNealy clarified at his deposition that his conspiracy claims are based on the same alleged conduct that violated his rights under Title VII and Section 1981.[136]

Motiva argues, "With this needed clarification, McNealy's conspiracy claims should be dismissed because '§ 1985(3) may not be invoked to redress violations of Title VII.'"[137] Motiva also argues McNealy's Section 1985 claims should be dismissed because the only alleged target of this race-based conspiracy is McNealy himself and "[i]n order to establish a Section 1985 conspiracy, however, McNealy must present evidence that Motiva discriminated against African-Americans *as a class.*"[138]

In *Novotny*, the Supreme Court explained, "Section 1985(3) . . . *creates* no rights. It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right-to equal protection of the laws or equal privileges and immunities under the laws – is breached by a conspiracy in the manner defined by the section."[139] As the court in *Stewart v. Commercial Vehicles of South Florida, Inc.*, a case out of the

---

[135] R. Doc. 260 at ¶ 72.
[136] R. Doc. 341-1 at 189.
[137] R. Doc. 275-1 at 18-19 (quoting *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979)).
[138] *Id.* at 19 (emphasis is original) (citing *Harris v. Travis*, 55 F. App'x 716, at *3 (5th Cir. 2002)).
[139] *Novotny*, 442 U.S. at 376 (emphasis in original) (holding that a "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3).").

Middle District of Florida, explained, "Although holding that a deprivation of a right created by Title VII cannot form the basis of a claim under § 1985(3), *Novotny* declined to decide 'whether § 1985(3) creates a remedy for statutory rights other than those fundamental rights derived from the Constitution.'" [140] "*Novotny's* reasoning (that allowing a claim under Section 1985(3) based on a violation of Title VII would impair the effectiveness of the enforcement and conciliation scheme created by Congress for claims under Title VII) does not directly apply to a statutory right," such as the right to make and enforce contracts under 42 U.S.C. § 1981(a). [141] "Accordingly, whether a deprivation of a right secured by Section 1981(a) can be the basis of a Section 1985(3) conspiracy remains unsettled." [142] "However, courts have plausibly concluded that, because a claim for race discrimination *in employment* brought under Title VII cannot form the basis for a § 1985(3) conspiracy claim, the same claim should not survive 'simply because it is brought under § 1981.'" [143] "More important, as *Jenkins* notes, Justice Stevens's concurrence in *Novotny* provides powerful support for precluding a Section 1985(3) claim based on a deprivation of rights guaranteed by Section 1981(a)." [144] As the *Stewart* court correctly notes, "The congressional concern with redressing constitutional violations strongly suggests that Section 1985(3) was not 'intended to provide a remedy for the violations of statutory rights-let alone rights created by statutes that had not yet been enacted.'" [145] Accordingly, the *Stewart* court held, "the weight of persuasive authority supports the view

---

[140] 2009 WL 2025162, at *2 (M.D. Fla. July 9, 2009), *aff'd*, 366 F. App'x 41 (11th Cir. 2010).
[141] *Id.*
[142] *Id.* (collecting cases).
[143] *Id.* (emphasis added) (quoting *Jenkins v. Arcade Bldg. Maint.*, 44 F. Supp. 2d 524, 532-33 (S.D.N.Y. 1999)).
[144] *Id.* (quoting Justice Stevens's concurrence that "the Congress which enacted both [Sections 1 and 2 of the Civil Rights Act of 1971] was concerned with providing federal remedies for the deprivations of rights protected by the Constitution and, in particular, the newly ratified Fourteenth Amendment.").
[145] *Id.* (quoting *Novotny*, 442 U.S. at 385 (Stevens, J., concurring)).

that Section 1985(3) provides no remedy for a deprivation of rights protected by Section 1981(a)."[146] As McNealy's conspiracy claims pursuant to Section 1985(3) relate solely to his employment discrimination claims pursuant to Section 1981, Motiva's motion for summary judgment dismissing Plaintiff's Section 1985 claims is granted.

Plaintiff has also alleged a claim under 42 U.S.C. § 1986. However, because Plaintiff has failed to allege a proper Section 1985 claim, his Section 1986 must be dismissed as well.[147] Accordingly, Motiva's motion for summary judgment dismissing Plaintiff's Section 1986 claims is granted.

III.    <u>Section 301 of the Labor Management Relations Act</u>

Plaintiff alleges, pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), Motiva's "total departure from the provisions stipulated [under the collective bargaining agreement] damaged Newton McNealy. The failure to adhere and enforce and protect his rights and interests under the collective bargaining agreement constitute a breach of contract, duty and trust in a discriminatory manner."[148]

Motiva first argues that McNealy has not exhausted the grievance and arbitration procedure set forth in the collective bargaining agreement as is required under Section 301.[149] The Fifth Circuit has clearly explained that "[i]f the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted

---

[146] *Id.*
[147] *See Newberry v. East Texas State Univ.*, 161 F.3d 276, 281 n.3 (5th Cir. 1998) ("If the § 1985 claim fails, so must the § 1986 claim.") *See also*, *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000) ("And because a valid § 1985 claim is a prerequisite to a § 1986 claim, that claim is also invalid.")).
[148] R. Doc. 260 at ¶ 114. Plaintiff's claim appears to be for breach of a collective bargaining agreement pursuant to 29 U.S.C. § 185(a).
[149] R. Doc. 275-1 at 20.

the procedure."[150] Motiva provides the section of the collective bargaining agreement providing a grievance and arbitration procedure that is the exclusive and final remedy for "[a]ll complaints arising out of the application or interpretation of'" the agreement.[151] It is undisputed that McNealy has not followed the required four-step grievance procedure and that he did not submit his claim to arbitration.[152] McNealy did not address Motiva's argument in his Opposition to Motiva's motion for summary judgment.[153]

The Fifth Circuit has recognized the following three exceptions to the exhaustion requirement: (1) the union wrongfully refuses to process the employee's grievance, thus violating its duty of fair representation; (2) the employer's conduct amounts a repudiation of the remedial procedures specified in the contract; (3) exhaustion of contractual remedies would be futile because the aggrieved employee would have to submit his claim to a group which is in large part chosen by the employer and union against whom his real complaint is made.[154] Motiva argues McNealy cannot demonstrate any of the recognized exceptions apply here.[155] The only exceptions that could possibly apply is the futility exception.[156] The Fifth Circuit has held, however, that the availability of a neutral arbitrator refutes a futility argument as a matter of law.[157] Section 10.02 of the Collective

---

[150] *Daigle v. Gulf State Utils. Co., Local Union Number 2286*, 794 F.2d 974, 977 (5th Cir. 1986).

[151] R. Doc. 275-10 at 2.

[152] R. Doc. 275-2 at ¶ 45 (citing R. Doc. 275-5 at ¶ 36); R. Doc. 310-3 at ¶ 45. Although McNealy states that he denies this statement of fact, the Plaintiff does not provide any evidentiary support or explanation for his denial. For a further analysis regarding the Court's finding that the Plaintiff did not exhaust his remedies under the collective bargaining agreement, see the Court's Order and Reasons regarding Defendants United Steel Workers Union, Local 750 and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO's Motions for Summary Judgment. R. Doc. 341 at 14-17.

[153] *See* R. Doc. 310.

[154] *See Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 519 (5th Cir. 1978) (citations omitted).

[155] R. Doc. 275-1 at 20 n.89.

[156] To the extent Plaintiff attempts to argue that the Local Union wrongfully refused to process his grievance, the Court has already concluded that the Plaintiff did not file a grievance with the Local Union. *See* R. Doc. 341 at 15.

[157] *Parham v. Carrier Corp.*, 9 F.3d 383 (5th Cir. 1993).

Bargaining Agreement clearly provides an arbitration option in the circumstance that the union member's complaint is not resolved on an acceptable basis by other means.[158] Because the Plaintiff cannot prove an exception to the exhaustion requirement applies, Motiva's motion for summary judgment dismissing Plaintiff's claims under Section 301 of the Labor Management Relations Act is granted.

IV.     Section 158(a) of the National Labor Relations Act

Plaintiff, in his Fourth Amended Complaint, alleges Motiva "committed an unfair labor practice" by failing to promote Plaintiff, terminating his employment relationship, and when it "restrained/coerced McNealy in the exercise of his rights under" the National Labor Relations Act ("NLRA").[159] As Motiva correctly identifies, however, "[T]here is no private cause of action against *employers* to prevent and remedy unfair labor practices under the NLRA; enforcement is left, instead to the [National Labor Relations] Board."[160] Accordingly, Motiva's motion for summary judgment dismissing Plaintiff's claims under the NLRA is granted.

V.     Federal Claims Against Shell Oil Company and Shell Chemical LP

Plaintiff has alleged the same claims against Shell Oil Company ("Shell Oil") and Shell Chemical LP ("Shell Chemical") (collectively the "Shell Defendants").[161] Shell Oil and Shell Chemical each filed motions for summary judgment.[162] Plaintiff opposes the Shell Defendants' motions.[163] For the reasons set forth above, the Shell Defendants' motions for summary judgment are granted with respect to Plaintiff's federal claims

---

[158] R. Doc. 275-10 at 4.
[159] R. Doc. 260 at ¶¶ 106-108
[160] R. Doc 275-1 at 21 (alterations and emphasis in original) (quoting *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 360 n.9 (5th Cir. 2013)).
[161] *See* R. Doc. 260; R. Doc. 245.
[162] R. Docs. 278, 279.
[163] R. Docs. 309, 312.

pursuant to Sections 1981, 1985(3), 1986, Section 301 of the LMRA, and Section 158(a) of the NLRA.

VI.    <u>State Law Claims</u>

Plaintiff has also alleged state law tort claims and a state law claims for retaliatory discharge against Motiva and the Shell Defendants.[164] In its Order with respect to the various motions to dismiss, the Court explained:

> McNealy's other claims against the Defendants are state law claims over which the Court possess only supplemental jurisdiction.

> Title 28, United States Code, Section 1367(c), provides that district courts may decline to exercise supplemental jurisdiction over state law claims if, *inter alia*, "the district court dismisses all claims over which it has original jurisdiction."

> Because the Court converted certain of Defendants' motions to summary judgment motions, the Court defers ruling on whether to exercise supplemental subject matter jurisdiction on McNealy's state claims until after the Court rules on the motions for summary judgment.[165]

As the Court has now ruled on and granted Motiva and the Shell Defendants' motions for summary judgment with respect to all federal claims raised against these Defendants, the Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to Title 28, United States Code, Section 1367(c). The remaining state law claims are dismissed without prejudice pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

VII.    <u>Plaintiff's Allegations of Discovery Violations</u>

In his oppositions to Motiva's and the Shell Defendants' Motions for Summary Judgment, Plaintiff argues these Defendants have "failed to properly answer or

---

[164] *See* R. Doc. 209-1 at 2.
[165] R. Doc. 237 at 38.

incompletely and evasively responded to interrogator[ies], refused to produce discoverable information propounded in request[s] for production of documents, and committed perjury in responding to request[s] for admissions in contravention."[166] Plaintiff's complaints about alleged discovery violations should not be addressed in an opposition to a motion for summary judgment. If true, the complaints should have been raised in a timely Federal Rule of Civil Procedure 37 motion to compel. The Plaintiff did not request additional time for discovery under Federal Rule of Civil Procedure 56(d).

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Motiva's and the Shell Defendants' Motions for Summary Judgment[167] dismissing all of Plaintiff's claims with prejudice is **GRANTED IN PART** and **DENIED IN PART**. The Defendants' Motions for Summary Judgment are granted with respect to Plaintiff's federal claims. The Defendants' motions are denied to the extent the Defendants request that Plaintiff's state law claims be dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Section 1981, 1985(2) and (3), 1986, and 141 claims are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**New Orleans, Louisiana, this 5th day of June, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[166] R. Docs. 309-1 at 25-26, 310-1 at 13-14, 312-1 at 20-22.
[167] R. Docs. 275, 278, 279.